Elmer A. VOGEL *v.* SIMMONS FIRST NATIONAL BANK OF PINE BLUFF

CA 84-344 689 S.W.2d 576

Court of Appeals of Arkansas
Division I
Opinion delivered May 22, 1985

*Jones & Petty,* for appellant.

*Ramsey, Cox, Lile, Bridgeforth, Gilbert, Harrelson & Starling,* for appellee.

GEORGE K. CRACRAFT, Chief Judge. Elmer Vogel appeals from a $212,272 judgment entered against him as guarantor of a line of credit extended to River Valley Enterprises, Inc. by Simmons First National Bank of Pine Bluff. A recitation of the factual background is necessary to bring the narrow issues presented by this appeal into focus.

In 1981 the appellant and Troy McNeill organized a

corporation to be known as River Valley Enterprises, Inc. for the purpose of selling irrigation equipment. The appellant invested $20,000 in the business and loaned McNeill a similar amount for his investment. The appellant served as president, his wife as vice-president, McNeill as secretary and Bonita K. Agress as office manager. McNeill and Agress were the active officers even though the appellant owned a majority of the stock. Appellant and McNeill arranged with Simmons First National Bank to extend to $200,000 line of credit to the corporation on execution by the appellant and McNeill of a personal guaranty agreement in which they guaranteed payment of "any and all indebtedness contracted by borrower (River Valley Enterprises, Inc.) with Simmons First National Bank limited only to the total outstanding indebtedness, exclusive of interest and cost, of $200,000." On that same day they delivered to Simmons First National Bank a copy of a corporate resolution authorizing McNeill and Agress to negotiate and procure loans to the corporation from Simmons up to $200,000 and to secure the loans by pledge, assignment or lien on personal property of the corporation.

On a number of occasions between May 1981 and March 1982 McNeill or Agress would execute notes in favor of Simmons First National Bank and would assign equipment sale contracts as collateral. On each occasion the notes were paid as agreed. Under its agreement with Simmons First National Bank, River Valley collected on the notes assigned to the bank and paid their collections to the bank. On March 22, 1982 Agress executed a note for $190,000 to Simmons First National Bank and secured it by assignment of two sales contracts for irrigation systems sold to Thomas R. Stricklin in Mississippi totaling $260,000, as well as all accounts receivable and inventory of River Valley. Agress did not inform Simmons that Stricklin had already paid $139,000 on these contracts.

Simmons had no knowledge of the situation until the note secured by the Stricklin contract was in default in July 1982. At that time Simmons Bank notified Stricklin to pay the balance of his contract directly to the bank. Then the bank learned that additional payments had been made to River Valley and that the balance due on the notes in the amount of $39,000 had been paid directly to another creditor of River Valley on Agress's authorization.

Since River Valley's business venture was not successful McNeill and Vogel decided to end the business. When Simmons Bank called on them for additional collateral McNeill executed a third mortgage on his home as additional security for the indebtedness. McNeill's home was sold in foreclosure to the second mortgagee for an amount insufficient to pay Simmons Bank's third mortgage and the sale was confirmed by the chancery court. Simmons Bank then brought this action on the Stricklin note against River Valley and against Vogel and McNeill on their guaranty agreement. McNeill filed a general denial. Vogel filed an answer denying allegations of the complaint and additionally asserting he should not be held personally liable on the guaranty agreement because Simmons Bank has released the collateral without his consent.

On the morning of the trial Simmons Bank presented a motion in limine asserting it had learned through discovery that McNeill made some complaint about the foreclosure sale of his home. Simmons Bank asserted that this testimony was irrelevant to the issues in the case and should be excluded as it would be prejudicial if let in. At an in chambers hearing which was not recorded the court granted the motion in limine.

At the close of all of the testimony the appellee moved for a directed verdict. The trial court ruled that there was sufficient evidence to go to the jury on the issue of the commercial reasonableness of the sale of inventory and receivables but ruled that there was insufficient evidence to submit to the jury the question of release of the guaranty insofar as the Stricklin note was concerned. The court properly instructed the jury on the other issues in the case and instructed them that a guarantor who pleads release has the burden of proving that the collateral was impaired without his consent and the extent of the impairment. He additionally instructed them:

> The court instructs you that you may not reduce the bank's claim on the basis of its conduct relating to the Stricklin contract, and any reduction of the bank's claim is limited to matters related to the accounts receivable and inventory.

After the jury had retired to consider its verdict the court suggested that his ruling on the motion in limine be made a matter of record and that the motion be filed and marked by the clerk.

The appellant was permitted to make a proffer of proof concerning the foreclosure sale which we will discuss in other portions of this opinion.

Appellant first contends that the trial court erred in not submitting the issue of release from the guaranty agreement to the jury. It is well settled that a guarantor is not liable where his underlying agreement has been changed without his consent. Any material alteration in the obligation made without the consent of the guarantor discharges him of all liability. *Moore* v. *First National Bank of Hot Springs*, 3 Ark. App. 146, 623 S.W.2d 530 (1981). It is also settled that where there is a guaranty agreement the collateral is not held for the protection of the creditor alone. Where the creditor unjustifiedly impairs or releases the collateral the guarantor is completely absolved of all liability. A guarantor who pleads release has the burden of proving the release or impairment and the extent to which the collateral was impaired. *Van Balen* v. *Peoples Bank & Trust Co.*, 3 Ark. App. 243, 626 S.W.2d 205 (1981). The appellant contends that the actions of the bank with regard to the Stricklin note made these rules applicable and released him from liability under his guaranty. We do not agree for several reasons.

Simmons Bank did nothing to impair or release any collateral securing the Stricklin note. When the collateral was delivered to them it was already impaired and the impairment resulted solely from actions on the part of the managing agents of River Valley Enterprises. That is, if the payment of $139,000 on the original note be deemed an impairment, the collateral was already impaired when it was offered to Simmons Bank. If the payments of the balance due on that note thereafter be considered an impairment those payments were accepted by River Valley. Any release was as a direct result of the actions of River Valley and not of Simmons Bank. Appellant was the president of River Valley.

The appellant argues that Simmons Bank's failure to inquire of Stricklin as to the condition of his obligation under the note was an act of bad faith and constituted an impairment of collateral which absolved him of liability as guarantor. We find no basis for establishing a duty on the part of the bank to make such an inquiry under the circumstances of this case. Such an inquiry would only disclose what the management of River Valley

already knew. As appellant was the principal officer of River Valley the knowledge of its agents was imputed to him. Furthermore, the guaranty agreement executed by the appellant covered all obligations of whatever nature contracted by River Valley's authorized agents with Simmons Bank, whether secured or unsecured.

■ The appellant also contends that the bank did not follow accepted banking procedures when they did not inquire of Stricklin as to the condition of the note at the time it was accepted as collateral. There was no evidence whatever of what constituted accepted banking practice in this regard. The only evidence on that point was that in some instances where the bank did not have complete faith in the person offering to discount consumer paper it would verify that the goods had in fact been sold. In this case it was the testimony of the bank that they did not make any inquiry because their experience with River Valley on prior transactions had been excellent and they were not concerned because they had a guaranty agreement signed by the appellant, whose net worth was impressive. Vogel merely testified that because the bank asked him some questions when his personal equipment notes were offered to Simmons Bank he *assumed* that they did so in every case. He was surprised to find they had not done so with regard to the Stricklin note. We agree with the trial court that the bank had no such obligation.

■ The appellant further argues that the guaranty agreement was violated because the plain intent of the parties was that the guaranty be applicable only to loans secured by equipment sales contracts and loans were not to exceed 75% of the contract amounts. The clear wording of the written agreement excludes such an interpretation. The only evidence mentioning this practice was the banker's testimony that the bank had an in-house rule to that effect. There was no evidence that Vogel and McNeill were aware of such a rule. We find no merit to this contention.

After the jury had retired and the court had granted the motion in limine the appellant made a proffer of proof that when the third mortgage was executed on the McNeill residence it was intended as additional security for the guaranty agreement. He contends that at some time after the foreclosure proceedings were instituted he and appellant were informed by the bank that it would be present at the sale and would bid to protect the equity.

McNeill would have stated that equity in the house was in excess of $30,000. The banker testified the bank sent a representative to the sale but did not bid enough to prevent the property from being bought by the second mortgage holder. Appellant contends that this was a depletion of the security which effected a release at least to the extent of the equity of the property. We do not agree.

 Simmons did not release, impair or extinguish the equity or impair the lien of the third mortgage. That security was extinguished in the court's foreclosure decree and the sale was subsequently confirmed as having brought an adequate price. The record does not contain a statement by the trial court of its reasons for granting the motion in limine. If it was correct in its ruling, even if for the wrong reason, we will affirm. An alteration of a guaranty agreement is not material unless the guarantor is placed in the position of being required to do more than his original undertaking. If the bank failed to do an act required to be done under the agreement it is a breach of contract rather than an alteration. *Carroll-Boone Water District* v. *M & P Equip. Co.*, 280 Ark. 560, 661 S.W.2d 345 (1983). If the bank in fact agreed to bid a sum in excess of the first and second mortgages, its failure to do so was not a release of collateral. Such a failure would be a breach of contract giving rise to a suit for damages which could have been asserted as a set-off.

 There is nothing in the pleadings asserting a set-off for breach of contract regarding the sale of McNeill's home. There are no allegations concerning that sale. ARCP Rule 8(c) requires that all affirmative defenses including a set-off must be contained in the response to a complaint. *Odaware* v. *Robertson Aerial-AG*, 13 Ark. App. 285, 683 S.W.2d 624 (1985). Evidence of a breach of contract was immaterial to any issue and completely outside the pleadings in this case.

Affirmed.

MAYFIELD and CLONINGER, JJ., agree.