Barbara ROGERS *v.* TUDOR INSURANCE COMPANY

96-177                                                   925 S.W.2d 395

Supreme Court of Arkansas
Opinion delivered July 1, 1996

*Karr & Hutchinson,* by: *W. Asa Hutchinson,* for appellant.

*Wright, Lindsey & Jennings,* by: *Harry S. Hurst, Jr.,* for appellee.

ROBERT L. BROWN, Justice. Two points are raised in this appeal. The first is one of jurisdiction and concerns whether appellant Barbara Rogers effected her appeal in timely fashion. We believe that she did, and we deny the motion to dismiss by appellee Tudor Insurance Company. The second point is raised by Rogers and concerns alleged error by the trial court in granting summary judgment in favor of Tudor Insurance on the issue of whether the liability coverage carried by Tudor Insurance permitted a direct

action against that carrier. We conclude that the trial court did err, and we reverse the judgment and remand the matter for trial.

On June 29, 1995, Rogers sued Tudor Insurance as the insurance carrier for PEOPL, Inc., a cooperative nonprofit corporation known as Personal Empowerment of the Psychiatrically Labeled, Inc. (PEOPL).[1] The suit was brought under the Direct Action statute, which is codified at Ark. Code Ann. § 23-79-210 (Repl. 1992). The complaint asserted that Rogers was employed by PEOPL from February of 1994 through January 21, 1995. She received a letter of termination dated January 21, 1995, and signed by PEOPL's president and treasurer. Prior to that letter, she alleged that she had no knowledge of any problems with her employment. She further asserted that the letter implied financial irregularities on her part but did not invite her to present a response to any charges, which was in violation of the organization's rules.

As a result of her termination, Rogers claimed that she was subjected to public embarrassment because the agents, directors, and employees of PEOPL made public comments "about alleged irregularities and financial misdealings on the part of the Plaintiff." According to her complaint, the stories were reported in the *Arkansas Democrat-Gazette* newspaper and on television broadcasts, and the public allegations and unfounded stories damaged her reputation. She sought to recover from Tudor Insurance for the negligence of the "officers, directors and agents" of PEOPL as well as for an intentional infliction of emotional distress. She further claimed a breach of her employment contract.

On August 3, 1995, Tudor Insurance filed a motion to dismiss under Ark. R. Civ. P. 12(b)(6) for failure to state facts upon which relief could be granted. In that motion, Tudor Insurance argued that the Direct Action statute was inapplicable to the facts as set forth in the complaint. According to the carrier, the statute allows direct actions against the insurer of a non-profit entity and does not authorize direct actions against carriers which provide coverage for officers and directors of nonprofit organizations. Thus, because PEOPL was not insured, Tudor Insurance maintained that a direct action could not survive.

---

[1] Though PEOPL's organization status is not entirely clear from the record, its by-laws do refer to it as a corporation.

The trial court treated the motion as one for summary judgment and on October 13, 1995, it entered its order of dismissal. Rogers then filed her notice of appeal on November 13, 1995.[2] Her notice of appeal, however, did not designate the record on appeal or state that a transcript of testimony had been ordered. Tudor Insurance filed a motion to dismiss the appeal in the trial court on grounds that Rogers's notice of appeal was ineffective. On November 27, 1995, which was two weeks after the notice of appeal was filed, Rogers filed a "Designation of Record on Appeal." In that filing, she stated that no transcript was ordered because no testimony was taken and the appeal was only based on a record which included the pleadings, motions, and order on file with the circuit clerk. In an order entered on January 3, 1996, the trial court denied the motion to dismiss for lack of jurisdiction.

## I. Notice of Appeal

We first address Tudor Insurance's contention that Rogers's notice of appeal is defective for her failure to designate the record and order a transcript as required by Ark. R. App. P. 3(e). As a corollary point, Tudor Insurance notes that when the Designation of Record was filed, it was outside the 30-day period for filing the notice of appeal and consequently was ineffective.

Rule 3(e) of the Rules of Appellate Procedure states that a notice of appeal:

> [S]hall designate the judgment, decree, order or part thereof appealed from and shall designate the contents of the record on appeal. The notice shall also contain a statement that the transcript, or specific portions thereof, have been ordered by the appellant.

Tudor Insurance concedes that the November 13, 1995 notice of appeal does name the parties and the order appealed from, but the carrier contends that the notice was fatally deficient nonetheless because of its omissions relating to the transcript and record. Rogers, on the other hand, argues that there was substantial compliance with Appellate Rule 3(e) because the record in this case was obvious and, in any event, a Designation of Record was filed, albeit two

---

[2] November 12, 1995, which was the thirtieth day from entry of judgment fell on a Sunday, thus allowing filing of the notice of appeal on the thirty-first day.

weeks after the notice of appeal.

■ This court has held that "[t]he filing of a notice of appeal is jurisdictional but irregularities in the other procedural steps . . . are merely grounds for such action as this court deems appropriate." *Brady* v. *Alken, Inc.*, 273 Ark. 147, 151, 617 S.W.2d 358, 360 (1981), *quoting Davis* v. *Ralston Purina Co.*, 248 Ark. 14, 449 S.W.2d 709 (1970). The procedural steps outlined in Appellate Rule 3(e) require only substantial compliance, provided that the appellee has not been prejudiced by the failure to comply strictly with the rule. *Hudson* v. *Hudson*, 277 Ark. 183, 641 S.W.2d 1 (1982).

For example, in *Hudson* v. *Hudson*, the appellant filed a timely notice of appeal but failed to include a statement that the transcript had been ordered. We recognized the appellant's responsibility in this regard and held that because this rule was totally ignored, the appeal must be dismissed. However, in *Johnson* v. *Carpenter*, 290 Ark. 255, 718 S.W.2d 434 (1986), appellant's notice of appeal did contain a statement that the transcript had been ordered. Nevertheless, there was a misunderstanding between appellant's counsel and the court reporter about whether the transcript had been requested. Because the attorney had not totally ignored Rule 3(e), we held that there was substantial compliance with the rule. Our holding in *Carpenter* further turned on the absence of any prejudice to the appellee even though there was a minor delay in ordering the transcript.

There is, too, a line of cases where this court has examined situations where language was omitted from the notice of appeal about the designation of the record even though the requirements of the rule were actually met. This court has held that it was not fatal to an appeal when the notice of appeal did not state that the transcript had been ordered, but when in actuality it had been ordered. *See Phillips* v. *LaValle*, 293 Ark. 364, 737 S.W.2d 652 (1987); *Wise* v. *Barron*, 280 Ark. 202, 655 S.W.2d 446 (1983); *see also Johnson* v. *Carpenter, supra*. In these cases, we also hinged our holding on the fact that there had been substantial compliance with the rule. We observed that the purpose of the rule had not been frustrated and that the appellee had not been prejudiced by any delay. On the other hand, both this court and the Court of Appeals have held that there is no substantial compliance when the transcript is not actually ordered or when the notice of appeal declares that the transcript has been ordered when, in fact, it has not been.

*See DeViney v. State,* 299 Ark. 471, 772 S.W.2d 607 (1989); *McElroy v. American Medical Int'l, Inc.,* 297 Ark. 527, 763 S.W.2d 89 (1989); *Daffin v. Seymore,* 14 Ark. App. 163, 685 S.W.2d 539 (1985); *Hudson v. Hudson, supra.*

■ The case before us is most closely akin to *Wise v. Barron, supra,* and to *Phillips v. LaValle, supra,* because we discern no intent on Rogers's part to disregard Rule 3(e). Moreover, there was no prejudice to Tudor Insurance occasioned by the failure to designate the record or to state that the transcript had been ordered within the 30-day period. The absence of prejudice, of course, does not automatically determine the substantial-compliance question. But here, the Designation of the Record, which designated the pleadings, motions, and order, was filed two weeks after the notice of appeal. Under these circumstances, where the appeal was from an order of summary judgment and where no testimony was involved, we hold that there was substantial compliance with Ark. R. App. P. 3(e). The motion to dismiss the appeal is denied.

## II. *Direct Action Statute*

■ We turn then to Rogers's sole point on appeal which is that the trial court misconstrued the Direct Action statute, Ark. Code Ann. § 23-79-210 (Repl. 1992). We note initially that although Tudor Insurance moved to dismiss the case under Ark. R. Civ. P. 12(b)(6), the trial court treated the motion as one for summary judgment. This was correct because the court made its decision based in part on the language of the insurance policy which was attached to Tudor Insurance's reply to its motion to dismiss. *See* Ark. R. Civ. P. 12(b) and (c); *see also Rankin v. Farmers Tractor & Equip. Co.,* 319 Ark. 26, 888 S.W.2d 657 (1994); *Amalgamated Clothing & Textile Workers Int'l Union v. Earle Indus., Inc.,* 318 Ark. 524, 886 S.W.2d 594 (1994). As a consequence, we review the order as one for summary judgment though it is styled "Order of Dismissal."

The Direct Action statute reads in pertinent part:

(a)(1) When liability insurance is *carried by* any cooperative nonprofit corporation, association, or organization, . . . and if any person, firm, or corporation suffers injury or damage to person or property on account of the negligence or wrongful conduct of the organization, association, municipality or subdivision, its servants, agents, or employees act-

ing within the scope of their employment or agency, then the person, firm, or corporation so injured or damaged shall have a direct cause of action against the insurer with which the liability insurance is carried to the extent of the amounts provided for in the insurance policy as would ordinarily be paid under the terms of the policy.

(2) The insurer shall be directly liable to the injured person, firm, or corporation for damages to the extent of the coverage in the liability insurance policy, and the plaintiff may proceed directly against the insurer regardless of the fact that the actual tortfeasor may not be sued under the laws of the state.

Ark. Code Ann. § 23-79-210 (Repl. 1992). (Emphasis added.)

Tudor Insurance contended, and the trial court agreed, that the Direct Action statute was inapplicable in this case because its liability policy covers wrongful acts of the officers and directors of PEOPL and not the wrongful acts of PEOPL itself. Rogers attached the Policy Declarations to her complaint to show that the liability policy was issued to PEOPL. However, the policy language substantiates the fact that the officers and directors are the named insureds under the policy and not the corporation:

DIRECTORS AND OFFICERS LIABILITY

The Insurer shall pay the Loss of each and every Director or Officer (hereinafter called the Insureds) arising from any claim first made against the Insureds and reported to the Insurer during the Policy Period by reason of any Wrongful Act.

COMPANY REIMBURSEMENT

The Insurer shall reimburse the Company for Loss arising from any claim first made against the Insureds and reported to the Insurer during the Policy Period by reason of any Wrongful Act but only when and to the extent the Company has indemnified the Insureds for such Loss pursuant to law, statutory or common, or pursuant to Charter or By-Laws of the Company.

The insurance policy goes on to define "Insureds" as "all persons who were, now are, or shall be duly elected or appointed Directors

or Officers of the Company named in item 1 of the Declarations." The policy defines "Wrongful Act" as "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement or omission by the Insureds solely in the discharge of their duties in their capacity as Directors or Officers of the Company. . . ."

■   Our analysis then must focus on the Direct Action statute itself. The basic rule of statutory interpretation to which all other interpretative guides must yield is to give effect to the intent of the General Assembly. *Pugh* v. *St. Paul Fire & Marine Ins. Co.*, 317 Ark. 304, 877 S.W.2d 577 (1994). In ascertaining legislative intent, we look to the statutory language, subject matter, object to be accomplished, purpose to be served, remedy provided, legislative history, and other appropriate matters. *Omega Tube & Conduit Corp.* v. *Maples*, 312 Ark. 489, 850 S.W.2d 317 (1993).

■■   Under the statute, the following elements must exist for it to apply:

> (1) liability insurance must be carried by a nonprofit corporation;

> (2) a person must suffer injury or damage on account of negligence or wrongful conduct; and

> (3) the damage or injury must be on account of the negligence or wrongful conduct of "servants, agents, or employees" of the nonprofit corporation acting within the scope of their agency or employment.

In this case, there is no dispute over the fact that PEOPL "carried" the liability insurance on its officers and directors. The issue is whether the General Assembly equated "carrying" liability insurance with "covering" the corporation itself. We decline to give this statute such a narrow interpretation. Direct-action statutes are remedial in nature and are liberally construed for the benefit of injured parties and to effectuate the intended purposes. 12A *Couch on Insurance 2d* §§ 45:798, 45:800, pp. 455, 458 (1981).

■■   Furthermore, we have no hesitancy in holding that the officers and directors of PEOPL fall within the broad category of "servants, agents, or employees" of the nonprofit corporation under § 23-79-210. Certainly, officers and directors who are also employees of the nonprofit corporation qualify. Our statutes further make it clear that the powers of a nonprofit corporation are exer-

cised through its directors. Ark. Code Ann. § 4-33-801(b) (Repl. 1996). In addition, it is the officers of a nonprofit corporation who perform the duties fixed by the corporation's by-laws and prescribed by its directors. *See generally* Ark. Code Ann. § 4-27-841 (Repl. 1996). Officers and directors routinely act as agents for a corporation. See 3 Fletcher Cyc. Corp. § 839, p. 211 (1994). Indeed, a corporate entity can only act through its directors and officers. *See Madison Bank & Trust v. First Nat'l Bank of Huntsville,* 276 Ark. 405, 635 S.W.2d 268 (1982); *see also Vogel v. Simmons First Nat'l Bank of Pine Bluff,* 15 Ark. App. 69, 689 S.W.2d 576 (1985); *Hill v. State,* 253 Ark. 512, 487 S.W.2d 624 (1972); *see also* 2 Fletcher Cyc. Corp. § 505, p. 601 (Perm. Ed.). In the case before us, it was the president and the treasurer of PEOPL who terminated Rogers, which gave rise to this litigation.

Finally, the Direct Action statute does not require that the nonprofit corporation itself be the named insured under the policy. It would have been an easy matter for the General Assembly to have required this. But the Direct Action statute only mandates that the coverage be carried by the nonprofit corporation. PEOPL did carry the coverage in this case, and the corporation's officers and directors were the named insureds. We conclude that under these facts Tudor Insurance is subject to a direct cause of action.

Motion of Tudor Insurance Company to dismiss the appeal is denied. Reversed and remanded.

DUDLEY, J., not participating.

GLAZE AND ROAF, JJ., dissent.

TOM GLAZE, Justice, dissenting. The majority court totally misconstrues the purpose and intent of Arkansas's direct-action statute, Ark. Code Ann. § 23-79-210(a)(1) (Repl. 1992). That statute recognizes that a nonprofit organization, like PEOPL here, is immune from tort liability caused by its agents or employees; but even so, that organization may still opt to obtain liability insurance to provide an avenue of redress to parties sustaining injuries caused by that tort-immune entity's agents or employees. *See Savage v. Spencer,* 235 Ark. 946, 362 S.W.2d 668 (1962). In this respect, § 23-79-210(a)(1) provides in pertinent part that a nonprofit organization, *not* subject to tort liability, may carry liability insurance, so that any person who suffers injury on account of the wrongful conduct of the organization shall have a direct cause of action

against the insurance company.[1] Thus, even though the organization itself is immune from suit, the statute authorizes the organization's insurer to be sued directly by the injured party.

Individual board members and officers of nonprofit organizations, on the other hand, have never been afforded tort immunity, and a person may sue a board member or officer individually for his or her negligence causing the plaintiff's injury. Section 23-79-210(a)(1) neither expressly nor inferentially allows the injured person the right to file a direct action against any insurance company carrying tort liability coverage on any board member or officer of a nonprofit entity. See Savage, 235 Ark. at 950, 362 S.W.2d at 670.

Because board members and officers of nonprofit organizations can be individually sued, such organizations often feel obliged to arrange for director and officer liability and company reimbursement policies in order to protect those officials who agree, voluntarily usually, to serve or assist the organization. Here, PEOPL indisputably obtained such coverage from Tudor Insurance Company for its board and officer members and, in doing so, those individual members were the designated "insureds" under the policy. PEOPL, as an entity, was not designated or qualified as an insured.

In sum, under Arkansas law, a nonprofit organization is immune from tort liability, but if it obtains insurance naming itself as an insured to cover tort liability caused by its servants, agents and employees, a person injured by the organization's agents or employees may bring his or her suit directly against the organization's insurer. However, the direct-action statute is inapplicable to the nonprofit organization's board members and officers who, under Arkansas law, can be sued in tort and who are named insureds in a liability policy. Simply put, § 23-79-210(a)(1), by its own plain language, in no way is intended to provide direct actions against insurers that issue policies covering insureds like board members and officers who may be found individually liable for tort liability.

---

[1] In this respect, the statute covers the negligence of the organization or its servants, agents, or employees acting within the scope of their employment or agency with such organization.

For the reasons above, I would affirm the trial court's decision.

ROAF, J., joins this dissent.