Cite as 2024 Ark. App. 51

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-20-606

| | |
|---|---|
| | Opinion Delivered January 24, 2024 |
| JODY UNDERWOOD, INDIVIDUALLY AND AS A SHAREHOLDER AND MEMBER OF CONWAY PRECISION PRODUCTS, INC. <br><br> APPELLANT/CROSS-APPELLEE <br><br> V. <br><br> JEFFREY S. UNDERWOOD AND CONWAY PRECISION PRODUCTS, INC. <br> APPELLEES/CROSS-APPELLANTS | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CV-18-157] <br><br> HONORABLE SUSAN WEAVER, JUDGE <br><br> APPELLANT'S/CROSS-APPELLEE'S PARTIAL MOTION TO DISMISS DENIED; APPELLEES'/CROSS-APPELLANTS' PARTIAL MOTION TO DISMISS GRANTED; REVERSED AND REMANDED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL |

## MIKE MURPHY, Judge

### I. *Introduction*

This case is a business dispute between an ex-husband and his ex-wife. Conway Precision Products, Inc. ("CPPI"), was purchased by Jeff Underwood while he and Jody Underwood were married, at which point Jeff was the sole shareholder, director, and officer of the company. When the couple divorced, each was granted 50 percent of CPPI. Approximately three years later, Jody brought an individual and derivative action against Jeff and CPPI. At the conclusion of the trial, the jury found in Jody's favor in derivative actions for breach of fiduciary duty and conversion. The jury also entered a verdict in Jody's favor,

individually, for breach of fiduciary duty. She now appeals the jury's denial of a derivative claim regarding a shareholder loan that Jeff took from CPPI and the jury's denial of her declaratory-judgment action. On direct appeal, we reverse and remand.

Jeff cross-appeals the jury's verdict on Jody's breach-of-fiduciary-duty claim and her other derivative claims. On cross-appeal, we affirm.

Further, both parties have also moved to dismiss portions of the other's appeal. We grant Jeff's motion to dismiss and deny Jody's motion to dismiss.

## II. *Factual and Procedural Background*

Jody and Jeff Underwood married in 1985. During the marriage, Jeff purchased CPPI from his father in 2001, and he was the sole shareholder, director, and officer until the couple divorced on May 8, 2015. As part of the divorce, Jeff and Jody were each awarded 50 percent of CPPI. After the divorce, Jeff was elected chairman of the board of directors and president of CPPI, and Jody was elected vice chairman of the board and the corporate vice president and secretary.

Because CPPI was an S Corporation, Jeff and Jody incurred tax obligations as the shareholders. Jody received distributions to pay the taxes she incurred as an owner for the tax years 2015 and 2016. Also in 2015 and 2016, Jody requested and was provided access to CPPI's QuickBooks and other financial documents.

Prior to the divorce, Jeff's annual salary from CPPI was $65,000. Each year, he also received a payment from CPPI that was listed on the company's tax return as a "loan to shareholder," which Jeff considered to be a portion of his total compensation and which he

2

and the family used for their expenses. Jeff testified several times during the trial that the loan-to-shareholder designation was a tax strategy advised by his accountant and that he anticipated CPPI would deal with the alleged loans at some point in the future. Starting after the divorce, Jeff no longer received a loan to shareholder as a portion of his compensation and was instead paid an annual salary of $148,337 for 2015. In 2016, his annual salary and benefits totaled $211,148. In 2017, his annual salary was $195,211. Jody testified that she asked him several times to lower his salary, and he ignored that request.

On November 7, 2017, Jody requested financial information from CPPI via email to Jeff. On December 8, Jody drove to CPPI's office and asked for bank statements, credit-card statements, and financial information. During that visit, Jeff called the police to keep Jody from the premises. On November 10, Jeff responded to Jody's November 7 email that she would have to follow the provisions of the Arkansas Business Act of 1987 to obtain corporate information. On December 20, Jody's counsel sent a letter requesting to inspect financial documents on December 29. CPPI's counsel responded on December 27, alleging that Jody's request was not made in good faith or for a proper purpose to CPPI and declined the request.

On January 31, 2018, Jody filed a verified complaint on behalf of herself individually and as a shareholder and member of CPPI against Jeff and CPPI.

The first count was a request for the inspection of records. The circuit court ordered Jeff to allow Jody complete access to the CPPI QuickBooks and other corporate records on April 9, 2018. Jody's remaining claims were tried before a jury. Jody prevailed on some of her claims and lost on others. The jury found in Jeff's favor on the derivative collection-of-

3

loan claim and on the request for declaratory judgment. The jury awarded $40,456.36 to Jody, individually, on her breach-of-fiduciary-duty claim. The breach-of-fiduciary-duty claim and the conversion claim were listed on separate verdict forms, and the jury awarded CPPI $152,614.00 on each. The jury did not award any punitive damages.

The circuit court entered judgment consistent with the jury's verdicts on March 25, 2020. The circuit court awarded judgment in favor CPPI in the amount of $152,614.00 on the derivative conversion claim and for $152,614.00 on the derivative breach-of-fiduciary-duty claim but stated in its order that CPPI "may collect the $152,614.00 judgment described in Paragraphs A and B herein only once in order to avoid any potential for double recovery from Defendant, Jeffrey Underwood." Additionally, the circuit court ordered that judgment be entered in favor of Jody against Jeff for $40,456.36 on her individual claim for breach of fiduciary duty.

Jody timely appealed, and Jeff timely cross-appealed. Both parties have also filed partial motions to dismiss. On May 6, 2021, Jeff moved to dismiss Jody's appeal as to the declaratory judgment, arguing that her notice of appeal was deficient. On May 13, 2021, Jody moved to dismiss a portion of Jeff's cross-appeal, arguing that he had voluntarily paid a portion of the judgment with the property sale described above. These two motions were passed until the case was submitted.

III. *Motions to Dismiss*

A. Jeff's Motion to Dismiss Jody's Appeal of the Declaratory-Judgment Verdict

In her notice of appeal, Jody stated:

4

> Notice is hereby given that Jody Underwood (Jody Lynn Doran), Individually, and as a shareholder and member of Conway Precision Products, Inc. ("Plaintiff") appeals to the Arkansas Court of Appeals the March 25, 2020 Judgment of the Faulkner County Circuit Court entering judgment in favor of Jeffrey Underwood on Plaintiff's *claim for collection of loan* and each and every issue or intermediate order decided in the above-captioned case necessarily affecting the Judgment in favor of Jeffrey Underwood on Plaintiff's *claim for collection of loan*.

(Emphasis added.)

Jeff moved to dismiss the portion of Jody's appeal wherein she asks this court to reverse the circuit court's judgment regarding her declaratory-judgment action. He argues that Jody's notice of appeal is deficient because it does not identify the declaratory judgment as an issue on appeal. We agree.

Arkansas Rule of Appellate Procedure–Civil 3(ii) mandates that an appellant "designate the judgment, decree, order or part thereof appealed from" in his or her notice of appeal. The supreme court has held that when an appellant identifies only one point in the notice of appeal, it will consider only that one point. *Miles v. Deisch*, 228 Ark. 803, 808, 310 S.W.2d 505, 508 (1958). It is true that the courts require substantial compliance with Rule 3 in certain circumstances if no prejudice results. *See, e.g., Rogers v. Tudor Ins. Co.*, 325 Ark. 226, 231, 925 S.W.2d 395, 397 (1996). However, the cases where the appellate courts have excused technical deficiencies are cases in which the deficiency is incredibly minor and where the appellee is still given notice of what the issues on appeal will be. *See id.*

Further, "[t]he absence of prejudice, of course, does not automatically determine the substantial-compliance question." *Rogers*, 325 Ark. at 232, 925 S.W.2d at 398. The purpose of a notice of appeal is to provide the opposing party and the appellate court notice of the

5

issues on appeal. *See Williams v. St. Vincent Infirmary Med. Ctr.*, 2021 Ark. 14, 615 S.W.3d 721 (holding that a notice of appeal was fatally deficient as to one appellee when it did not provide notice to said appellee).

Jody identified only one portion of the judgment in her notice of appeal and did not provide notice that she intended to appeal remaining portions of the judgment. For these reasons, we grant Jeff's motion to dismiss the declaratory judgment portion of Jody's appeal.

B. Jody's Partial Motion to Dismiss Jeff's Cross-Appeal

The circuit court entered judgment in Jody's favor for $40,456.36 on her individual breach-of-fiduciary-duty claim. Jeff did not move to stay and for supersedeas bond in the circuit court. Jody proceeded with collection efforts on her individual judgment by filing writs of garnishment on July 23, 2020.

On July 29, 2020, a piece of marital property that was jointly owned by Jeff and Jody was sold. The title company disbursed one-half of the proceeds to Jody. Jeff's half was split among various entities, and $6,280.26 was paid to Jody and was labeled on the closing statement as "Proceeds to apply to Court Case #23CV-18-157 to Jody L. Underwood."

On April 16, 2021, Jeff moved to stay the individual judgment and asked for a supersedeas bond in the amount of $36,000, which was the approximate amount of Jody's individual judgment remaining after the property sale. This court granted the motion but increased the amount of the bond to $37,500 on May 5, 2021.

Jody now asks this court to dismiss the portion of Jeff's cross-appeal where he asks for a reversal of the individual breach-of-fiduciary-duty judgment. Jody argues that the $6,280.26

6

from the property sale was a voluntary payment and that, before that payment, Jeff had never asked for a supersedeas bond or represented to any court that he could not afford one. Jeff responds by noting that the payment was the result of a judgment lien and that, by operation of law, his portion of the proceeds had to be disbursed to Jody.

An appeal becomes moot if the appellant voluntarily pays the judgment or a portion of it. *Lytle v. Citizens Bank of Batesville*, 4 Ark. App. 294, 297–98, 630 S.W.2d 546, 547–48 (1982); *Hall v. Hall*, 2012 Ark. 429, at 4. However, a payment is not considered voluntary if it is the result of a writ of execution. *Reynolds Health Care Servs., Inc. v. HMNH, Inc.*, 364 Ark. 168, 183, 217 S.W.3d 797, 809 (2005). In any case, the posting of a supersedeas bond is "one of the most important factors to be considered" in determining whether a judgment was paid voluntarily. *Id.* Nevertheless, it is worth noting that in *Reynolds*, the supreme court did not dismiss the appeal, despite the lack of a supersedeas bond, because it was the result of a writ of execution and was not paid voluntarily. *Id.*

Because there was a lien on the funds, the disbursement was not voluntary. We also consider whether the sale of the property was voluntary. All this court has before it is the closing statement and the divorce decree. The divorce decree orders that all marital real property be sold. Because the sale was ordered by the circuit court in the divorce, it was not voluntary. Jody's partial motion to dismiss Jeff's cross-appeal is, therefore, denied.

IV. *Jody's Direct Appeal*

A. Standard of Review

Because the parties appeal a jury verdict, this court analyzes whether the verdict is

supported by substantial evidence. *Jenkins v. APS Ins., LLC*, 2013 Ark. App. 746, at 4, 431 S.W.3d 356, 360 (citing *ConAgra Foods, Inc. v. Draper*, 372 Ark. 361, 276 S.W.3d 244 (2008); *McMickle v. Griffin*, 369 Ark. 318, 254 S.W.3d 729 (2007)). "Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other." *Id.* The court views "the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered." *Id.*

### B. Derivative Loan-Collection Claim

The first issue on direct appeal is whether there was substantial evidence to support the denial of Jody's loan-collection claim. We hold there was not and reverse and remand this portion of the judgment.

The loan-collection claim is a breach-of-contract claim. "When performance of a duty under a contract is due, any non-performance is a breach." *Aon Risk Servs., Inc. v. Meadors*, 100 Ark. App. 272, 285, 267 S.W.3d 603, 612 (2007).

According to the jury instructions and the testimony at trial, it was undisputed that a loan from CPPI to Jeff existed and was classified as a loan to shareholder. Jeff testified that he understood the loans had to be paid back in the future in order to classify them as such on the company's tax returns. It was also undisputed at trial that Jeff had not paid any portion of the loans back to CPPI. According to the jury instructions, the only disputed issue at trial regarding a breach of contract was "whether Jeffrey Underwood did what the contract required of him."

8

Jody argues that there was not substantial evidence to prove that Jeff did what the contract required of him; therefore, the verdict should be reversed. The basis of Jody's argument is that the loan to shareholder was payable on demand as a loan without a maturity date. Her argument is that because she demanded on behalf of CPPI that Jeff repay the loan, he has breached the loan contract by not repaying the loan to shareholder.

If a loan agreement is silent as to the maturity date, then the loan is payable on demand. *Miracle Kids Success Acad., Inc. v. Maurras*, 2019 Ark. 146, at 5, 573 S.W.3d 533, 536. This means that the debt "is due immediately, so that an action can be brought at any time, without any other demand than the suit[.]" *Maddox v. City of Fort Smith*, 346 Ark. 209, 219, 56 S.W.3d 375, 382 (2001) (citing *Sturdivant v. McCorley*, 83 Ark. 278, 103 S.W. 732 (1907)). Jody claims that, as a shareholder, she made a demand on Jeff to repay the shareholder loans when she filed the lawsuit and that she was entitled to a directed verdict that the loans had to be paid immediately upon that demand.

The agreement in *Miracle Kids* was recorded in the minutes of a shareholders' meeting and stated:

> Company Funding – Based on suggestion of accountant all agree that funding of the company should take place as loans to the company, excluding the initial $ 25,000 by each partner which will be a capital contribution. The remaining $ 150,000 of required funding by each partner as stated in the Operating Agreement will be held as a liability of the company which will be repaid to each partner. The loans will accrue interest at an annual rate of 5%. MK and SD will be repaid their principal only at a rate of $ 5,000 monthly and MM and CM agree to defer loan repayment for now. This will replace the funding descriptions as detailed in the Operating Agreement.

*Miracle Kids*, 2019 Ark. 146, at 4, 573 S.W.3d at 535.

The loan agreement in *Maddox* was memorialized in an ordinance, which "indicated that the money was appropriated as a 'temporary loan' for funding fire equipment purchases. No date was set for repayment of the loan." *Maddox*, 346 Ark. at 218, 56 S.W.3d at 381.

This case differs slightly from *Miracle Kids* and *Maddox* in that there was no written loan agreement nor were the terms of the loan to shareholder memorialized in any way. However, it is similar in that Jeff could not articulate at trial any time period within which the loan was intended to be repaid. When asked about the repayment of the loans, Jeff testified only that "the loan will have to be paid." He never testified to a date, a specific event, or a condition that would require the loans to be repaid. Jeff's expert testified that loans to shareholders were common and that oftentimes a corporation will make distributions to the indebted shareholder to chip away at the loans once the corporation had predictable cash flow. However, Jeff's expert was not CPPI's accountant and did not testify about future distributions or repayment schemes that applied specifically to CPPI. There was no evidence entered at trial that indicated a date or circumstance for repayment of the loan to shareholder.

In his response, Jeff does not argue that there was a maturity date or condition for the loans. Instead, he argues that the loans were part of his compensation and that Jody received the benefit of that compensation during the parties' marriage. Those arguments are inapposite to whether a loan from CPPI to Jeff had a maturity date. When the loans were made, Jeff was the only shareholder and, therefore, chose to take part of his compensation in the form of loans. Further, whether Jody received any benefit from the loan to shareholder

is irrelevant because the loans are from CPPI and will be repaid to CPPI under the derivative action.

We hold there was no sufficient evidence for the jury to determine Jeff had done what the loan contract required of him. Therefore, we reverse and remand the judgment with regard to the loan-collection derivative claim.

Jody next urges this court to assign an interest rate of 6 percent to the loan. There was disputed evidence presented at trial as to the interest rate on the loan. "[I]nterpretation of an ambiguous contract term is within the jurisdiction of the circuit court for resolution by the trier of fact." *McNair v. McNair*, 316 Ark. 299, 306, 870 S.W.2d 756, 760 (1994). The jury did not make any factual findings regarding the interest rate of the loan to shareholder. "It is not the appellate court's place to try issues of fact[.]" *Wal-Mart Stores, Inc. v. Lee*, 348 Ark. 707, 719, 74 S.W.3d 634, 644 (2002). Further, this court does not issue advisory opinions. *See Bentonville Sch. Dist. v. Sitton*, 2022 Ark. 80, at 5, 643 S.W.3d 763, 768. The interest rate, and therefore the amount due to CPPI, is an issue that must be determined on remand.

Jody also appeals the circuit court's decision not to offer three jury instructions she proffered. Because we reverse and remand the judgment regarding the derivative loan-collection claim, we do not reach Jody's arguments regarding the jury instructions.

V. *Jeff's Cross-Appeal*

A. Liability for Breach of Fiduciary Duty to CPPI.

Jeff's first issue on appeal is whether there was substantial evidence to support the

jury's verdict in CPPI's favor on the breach-of-fiduciary duty claim. We do not reach this issue because even if error existed, it would be harmless. This court "do[es] not reverse for error which does not result in prejudice." *Robinson v. Abbott*, 292 Ark. 630, 632, 731 S.W.2d 782, 783 (1987); *see also Advanced Env't Recycling Techs., Inc. v. Advanced Control Sols., Inc.*, 372 Ark. 286, 299, 275 S.W.3d 162, 173 (2008); *Mikel v. Hubbard*, 317 Ark. 125, 130, 876 S.W.2d 558, 561 (1994). Arkansas Rule of Civil Procedure 61 states, "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." The supreme court noted the "philosophy behind this rule is that proceedings should not be disturbed because of a technical error which resulted in no prejudice." *Robinson*, 292 Ark. at 632, 731 S.W.2d at 783.

The jury awarded CPPI $152,614.00 on verdict form 2 and verdict form 3. During closing argument, Jody's counsel told the jury that the damages she was claiming on behalf of CPPI for breach of fiduciary duty and for conversion were "the exact same." Counsel then told the jury that if the jury awarded damages to CPPI for breach of fiduciary duty and conversion, "this will not be a double, but we have two claims for the same thing." Jeff's counsel did not object to the way this statement was framed. Indeed, the circuit court specified in its judgment that CPPI could collect the $152,614.00 only one time.

In other words, CPPI can currently collect $152,614.00 only one time from Jeff. If this court reversed the circuit court's judgment on the derivative breach-of-fiduciary-duty claim, then CPPI would still have the right to collect the $152,614.00 because Jeff did not appeal the judgment on the derivative conversion claim. In his reply, Jeff does not deny that

the alleged error on the derivative breach-of-fiduciary-duty claim would be harmless. Instead, he argues that there was not substantial evidence for the conversion verdict. But the judgment for conversion is not before this Court.

For this reason, we affirm the judgment for the derivative breach-of-fiduciary-duty claim.

## B. Separate Injury

Jeff's next point on appeal is that Jody did not present sufficient evidence to establish that she suffered an injury separate from that of the corporation. We reach the merits of this point on appeal because we denied Jody's partial motion to dismiss.

The supreme court has held several times that an individual shareholder can bring a direct, individual action if that shareholder has suffered an injury that is different from the injury the corporation suffered. *See Hames v. Cravens*, 332 Ark. 437, 442, 966 S.W.2d 244, 247 (1998); *Brandon v. Brandon Constr. Co. Inc.*, 300 Ark. 44, 48, 776 S.W.2d 349, 352 (1989); *Golden Tee, Inc. v. Venture Golf Sch., Inc.*, 333 Ark. 253, 260, 969 S.W.2d 625, 629 (1998). In contrast to Jeff's argument, none of these cases hold that a shareholder can sue a company individually only if that shareholder suffers an injury completely unrelated to his or her status as a shareholder. For example, in *Hames*, the court articulates several situations in which a direct action would be allowed: "For example, a shareholder may sue individually in an action to enforce that shareholder's voting rights, to compel the payment of dividends, or to protect minority shareholders." 332 Ark. at 442, 966 S.W.2d at 247. In other words, "a shareholder may sue to redress injuries received by him regardless of whether the same wrong

13

may have injured the corporation." *Brandon*, 300 Ark. at 48, 776 S.W.2d at 352.

Here, Jody supported her direct action by presenting evidence that she had not received disbursements for the taxes she incurred, personally, on behalf of the corporation. This is similar to the scenarios listed in *Hames*. The jury returned a verdict for Jody individually for $40,456.36, which was precisely the amount of taxes, penalties, interest, and preparation fees Jody testified to.

Jody presented substantial evidence that she suffered an injury separate from the injury suffered by CPPI, so we affirm the circuit court's judgment on Jody's individual breach-of-fiduciary-duty claim.

## C. Demand

For his final point on appeal, Jeff argues that Jody could not maintain a derivative action on behalf of CPPI at all because she did not present substantial evidence that she made a demand on the corporation or that it was futile to do so.

Arkansas Rule of Civil Procedure 23.1 states that a verified complaint bringing a derivative action "shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort."

Despite the use of the word "shall" in Rule 23.1, we have held that "there are situations in which the demand requirement should be relaxed and if the demand is in all likelihood a futile gesture, it is not essential." *Morgan v. Robertson*, 271 Ark. 461, 466, 609

14

S.W.2d 662, 665 (Ark. Ct. App. 1980). The requirement for the plaintiff to make a demand on the corporation is evaluated on a case-by-case basis. *Id.* at 467, 609 S.W.2d at 665. For example, it would be futile for a shareholder to demand the board of directors reimburse the company for fraud since "[s]uch protest would fall upon deaf ears, because a majority of the directors could not be expected to authorize, or to institute, an action against themselves charging themselves with fraud." *Id.*

Jeff argues that Jody's verified complaint was deficient in this regard. We disagree. In her verified complaint, Jody pled that she "demanded action by the Companies' Board of Directors as required by Ark. R. of Civ. P. 23.1. . . Further effort to obtain this information or to collect these amounts from Mr. Underwood, the remaining shareholder, officer, and director, would be futile." She also stated Jeff "denied [Jody's] request on December 7, 2017, for timely distributions for taxes and failed to reimburse her for costs and late fees   . . . ." She further pleaded that she "made good faith requests to access the corporate records . . . ." Jody provided dates on which she demanded to inspect the corporate records and reiterated that "further demand would be futile."

Further, at trial, Jody and Jeff both testified about the December 2017 incident in which Jody went in person to CPPI and asked for records, but Jeff called the police to keep her off of the premises. Jody also hired an attorney to request financial documents from CPPI, and that request was denied. It is clear from the record that Jody made several demands on CPPI, and they were all denied. Even if she did not make demands for every single element of damages she claimed, it is clear that it would have been futile for her to do

15

so. It is difficult to imagine Jeff being receptive to demands to redress alleged conversion or breach of fiduciary duty after he called the police when Jody went to the office and asked for corporate records.

Because Jody did allege a series of demands and futility in her verified complaint, and because she presented evidence of both at trial, we affirm the circuit court's judgment regarding Jody's derivative claims.

### D. Derivative Claims on Remand

Finally, Jeff argues that if any of Jody's derivative claims are remanded, they should not be tried to a jury. However, an appellate court does not anticipate future litigation. *See Wright v. Keffer*, 319 Ark. 201, 203–04, 890 S.W.2d 271, 272 (1995); *Thornton v. State*, 2015 Ark. 438, at 4, 475 S.W.3d 544, 546; *Bentonville Sch. Dist.*, 2022 Ark. 80, at 5, 643 S.W.3d at 768. This court also does not issue advisory opinions. *See id.* Therefore, we do not reach the issue of whether any derivative claims should be tried to a jury.

### VI. *Conclusion*

For the reasons detailed above, the judgment on direct appeal is reversed and remanded for further proceedings consistent with this opinion to determine damages on the derivative loan-collection claim. Regarding the issues on cross-appeal, the judgment is affirmed.

Appellant's/cross-appellee's partial motion to dismiss denied; appellees'/cross-appellants' partial motion to dismiss granted; reversed and remanded on direct appeal; affirmed on cross-appeal.

BARRETT and BROWN, JJ., agree.

*Newland & Associates, PLLC*, by: *Joel Hoover* and *Ashley D. Peoples*, for appellant/ cross-appellee.

*The Jiles Firm, P.A.*, by: *Gary D. Jiles* and *Matthew K. Brown*, for appellees/cross-appellants.