# Bill RANKIN *v.* CITY of FORT SMITH

98-037                                                990 S.W.2d 535

Supreme Court of Arkansas
Opinion delivered May 27, 1999

*Oscar Stilley*, for appellant.

*Daily & Woods*, by: *Jerry Lee Canfield* and *Barry D. Neal*, for appellee City of Fort Smith.

*Ledbetter, Hornberger, Cogbill & Arnold*, by: *Charles R. Ledbet-ter*, for appellee First National Bank.

*Shemin Law Firm*, by: *Kenneth R. Shemin*, for appellee Stephens, Inc.

L AVENSKI R. SMITH, Justice. This is an appeal from the Sebastian County Chancery Court which entered a summary judgment dismissing the complaint of appellants, Bill Rankin and Horton O. Elzea ("appellants"). Appellants complained that the City of Fort Smith (the "City") illegally exacted funds from its general fund to help pay for bonds issued by the city's Parking Authority for the construction of a downtown parking deck. We find no error and affirm.

*Facts*

In 1985, the City of Fort Smith issued revenue bonds to fund the building of a parking garage on the 700 block of Rogers Avenue in downtown Fort Smith. The City also created the Parking Authority to oversee the parking facilities and the collection of the revenues. In 1991, the City of Fort Smith Board of Directors ("Directors") determined that substantial debt service savings could be realized by refunding the 1985 bonds by issuance of Parking Facilities Refunding Revenue Bonds, Series 1991, in the amount of $1,775,000 ("the bonds"). Appellee Stephens, Inc. ("Stephens"), bought the bonds.

Under appropriate constitutional and statutory provisions, the special obligation bonds were issued to be paid from the revenues collected from parking facilities owned and operated by the City, including revenues from the parking garage and all parking meters. The City enacted Ordinance 64-91 to effectuate the bond sale and terms of repayment. The ordinance provided for the terms of repayment and use of any surplus revenues. Specifically, the ordinance stated:

> Section 6. The City covenants and agrees that it will own, operate and maintain a sufficient amount of parking facilities and will fix and collect rates and charges for the use of all parking facilities owned and operated by the City (the "Parking Facilities"), including the increasing of the same from time to time if necessary, which shall be sufficient, together with other available funds, to make the required deposits into the Bond Fund, the

Depreciation Fund and the Operation and Maintenance Fund (all hereinafter identified).

During the ensuing years, the revenue collected from the parking facilities was sufficient to cover the repayment of the bond and interest thereon, as noted in the pleadings and discovery filed by both parties. The terms of repayment under the revenue bond agreements required revenue monies collected and placed in a "Revenue Fund" to be transferred on the first business day of each month a sum equal to (i) 1/6 of the next installment of interest on the bonds plus (ii) 1/12 of the next installment of principal of the bonds plus (iii) an amount sufficient to provide for Trustee's fees. Surplus revenues would then be applied to the Depreciation Fund and the Operation and Maintenance Fund. The ordinance specifically provided that nothing required or prevented the City from expending any funds, other than revenue, "for operation and maintenance of the Parking Facilities or for premiums on insurance."

In addition to the revenue collected from the parking facilities, during the years 1992 through 1996, the City paid from its General Fund to the Parking Facilities Fund the following amounts:

| Year | Amount Transferred |
|------|--------------------|
| 1992 | $140,000 |
| 1993 | $80,000 |
| 1994 | $80,000 |
| 1995 | $80,000 |
| 1996 | $121,500 |

The Directors made these appropriations in the City's ordinances for these years. Appellants filed suit on October 22, 1997 contending these appropriations were illegal. Appellants state two bases for the the alleged invalidity of the City's actions. First, appellant contends that the Directors' actions constituted an illegal exaction in violation of the Arkansas Constitution. Second, Appellants contend the City illegally commingled the General Fund monies with the Parking Facilities Fund monies under Ark. Code Ann. § 14-304-209(c). The complaint requested that the

$501,500 paid from the General Fund into the Parking Facilities Fund be refunded to the General Fund.

Appellees, the City, First National Bank of Fort Smith ("the Bank"), and Stephens moved for summary judgment, and appellants cross-motioned for summary judgment, all contending that there were no genuine issues of material fact. A hearing was held on December 5, 1997, on all parties' motions for summary judgment. Stephens and the Bank joined in the City's motion for summary judgment. At the hearing and in a written decree entered on December 10, 1997, the Court entered summary judgment in favor of appellees, specifically finding that the transfer of monies from the General Fund to the Parking Facilities Fund was not an illegal exaction. The Court noted that the pleadings and supporting documents showed the following figures:

| Year | Revenues Collected | Debt Service |
|------|--------------------|--------------|
| 1992 | $ 271,277.00 | $ 258.845.00 |
| 1993 | $ 283,617.00 | $ 229,243.00 |
| 1994 | $ 282,109.00 | $ 232,411.00 |
| 1995 | $ 269,163.00 | $ 234,834.00 |
| 1996 | $ 248,701.00 | $ 236,551.00 |

The court found that because the Parking Facilities Fund's collected revenues exceeded the debt service bond requirements, there was no violation of Arkansas constitutional or statutory law. The court dismissed the case with prejudice. The additional findings by the court addressed a separate issue which has since become moot and which appellants have not pursued on appeal. Appellants timely appealed, and the court of appeals certified this case to the Arkansas Supreme Court under Ark. R. Sup. Ct. 1-2(b)(1), (2) and (6) as a case involving an issue of first impression, an issue of substantial public policy, and an issue involving a substantial question of law interpreting an act of the General Assembly.

*Standard of Review*

Motions for summary judgment are governed by Ark. R. Civ. P. 56, which provides that a party may move with or

without supporting affidavits for a summary judgment upon all or any part of a claim. A summary judgment should be granted only when it is clear that there is no issue of fact to be litigated. *Ragar v. Brown*, 332 Ark. 214, 964 S.W.2d 372 (1998); *Dillard v. Resolution Trust Corp.*, 308 Ark. 357, 824 S.W.2d 387 (1992). The moving party has the burden of showing that there is no genuine issue of material fact; all proof submitted must be viewed in a light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *Tullock v. Eck*, 311 Ark. 564, 845 S.W.2d 517 (1993). The movant must show entitlement to judgment as a matter of law. *Keller v. Safeco Ins. Co. of America*, 317 Ark. 308, 877 S.W.2d 90 (1994). Once the moving party has demonstrated prima facie that no material issue of fact remains, the defending party must respond, showing facts which would be admissible in evidence to create a factual issue. *Dixie Ins. Co. v. Joe Works Chevrolet, Inc.*, 298 Ark. 106, 766 S.W.2d 4 (1989). On appeal, we view the evidence in the light most favorable to the one against whom summary judgment was granted, *Young v. Paxton*, 316 Ark. 655, 873 S.W.2d 546 (1994), and determine if summary judgment was proper based on whether the evidence presented by the movant left a material question of fact unanswered. *Keller v. Safeco, supra. Sturgis v. Skokos*, 335 Ark. 41, 977 S.W.2d 217 (1998).

## Illegal exaction

Appellants contend that the City of Fort Smith's payment from its General Fund into the Parking Authority's Fund constituted an illegal exaction, i.e., an unlawful use of taxpayer's money. *Starnes v. Sadler*, 237 Ark. 325, 328, 372 S.W.2d 585 (1963). The Arkansas Constitution expressly enables the people to challenge suspect expenditures and prevent illegal misuses of tax revenue. Ark. Const. Art. 16, § 13. The burden of proof in an illegal-exaction case, as in other civil matters, rests with the party alleging its existence. In the instant case, appellants sought to establish the existence of an illegal exaction by alleging that the City unlawfully used its General funds to pay revenue bond indebtedness in violation of Amendment 65 of the Arkansas Constitution and Ark. Code Ann. § 14-304-206. Appellants initially contended that the funds were transferred to the Parking Author-

ity specifically to meet alleged shortfalls in the Fund's debt service obligation for the revenue bonds. However, the appellee City produced an affidavit containing evidence that for each year in question, the parking facilities' revenue exceeded the bond service debt obligation. Appellants offered no countervailing proof. They, in fact, have not contested the validity of the City's assertion that the parking facilities revenue exceeded its debt service. Instead appellants aver that the very fact that general funds were transferred to the Parking Authority Fund demonstrated conclusively that an illegal exaction occurred. This, however, is insufficient where the only facts in evidence support a contrary conclusion. The parties sought resolution of this matter by opposing summary-judgment motions thus indicating their stipulation that no disputed facts remained. They thereby indicated a willingness for the trial court's decision to be based upon the facts then in evidence whether or not other facts could have been adduced by further discovery or subsequent trial. When a summary-judgment motion is put forth with affidavits attached, the motion's opponent cannot rely on a bare denial or contrary allegation but must meet proof with proof. *George v. Jefferson Hospital Assoc.*, 337 Ark. 206, 987 S.W.2d 710 (1999), citing *Pugh v. Griggs*, 327 Ark. 577, 940 S.W.2d 445 (1997). Appellants failed to do so. Therefore, the trial court did not err in granting appellees' motion for summary judgment with respect to appellants' illegal-exaction claim.

### Commingling

In addition to their illegal-exaction claim, appellants argue that the City's General Fund monies were improperly commingled with the Parking Authority Fund money in violation of Ark. Code Ann. § 14-304-209(c). This statute, which was repealed in 1997, stated in part:

> (c) The treasurer of the municipality shall be custodian of the funds derived from income received from the parking facilities, and all of the funds received as such income shall be kept separate and apart from the other funds of the city.

Appellants apparently assert that commingling alone justifies repayment of the General Fund monies. Appellants argue that the funds cannot be commingled so that taxpayers can be protected

from "misjudgments of credit-happy municipalities" and "careless revenue bond purchasers." Appellees counter this argument by stating that appellants' construction of that statute places an unnecessary limitation on the spending power of a city when its true purpose is to assure adequate accounting safeguards for the parking facilities revenues. As such, it strains the construction of the statute. Instead, they argue that the statute should be read as one that principally establishes a basic accounting principle. We agree with appellees.

■ ■ The appropriate interpretation of Ark. Code Ann. § 14-304-209(c), given the context of the surrounding statutes, is that the legislature intended it to assure a proper accounting system was in place with adequate audit procedures and safeguards with respect to parking facility bond issues. It specifies that discrete accounts be maintained, we believe, to protect the integrity of the bond issue and thereby insure that revenues are used for their proper purpose. In other words, it provides that parking facility income be distinctly accounted for and is intended more to prevent its use for other purposes than to prevent the City from adding anything to it. We do not read it to be an express prohibition against General Fund monies being transferred to the parking facilities authority for specific use in operating and maintaining the facilities. The record simply does not reflect that funds were transferred for the purpose of paying bond indebtedness nor does it show that they had that effect. The excess General Fund monies in question were specifically appropriated for use in the maintenance and operation of the parking facilities. The undisputed facts upon which the trial court's judgment was entered indicate that the City's treasurer maintained the City's system of accounts in such manner that income derived from the parking facilities was accounted for separately in compliance with Ark. Code Ann. § 14-304-209(c).

Affirmed.

Special Justice BUD CUMMINS joins in this opinion.

THORNTON, J., not participating.