Bill MADDOX, Bill Grace, Jerry Frisby,
Melba Riggs, and Charles Beasley for
Themselves and All Others Similarly Situated
*v.* CITY of FORT SMITH

01-117 56 S.W.3d 375

Supreme Court of Arkansas
Opinion delivered October 11, 2001

*The Evans Law Firm, P.A.*, by: *Marshall Dale Evans* and *Charles N. Williams*; *Hirsch Law Firm, P.A.*, by: *E. Kent Hirsch*; and *Hodson, Wood & Snively*, by: *Mike Hodson*, for appellants.

*Daily & Woods, P.L.L.C.*, by: *Jerry L. Canfield*, for appellee.

ANNABELLE CLINTON IMBER, Justice. This is an illegal-exaction case brought pursuant to Article 16, §§ 11 and 13, of the Arkansas Constitution. The appellants, Bill Maddox, Bill Grace, Jerry Frisby, Melba Riggs, and Charles Beasley, on behalf of themselves and the citizens, residents, taxpayers, and utility ratepayers of the City of Fort Smith, appeal the summary-judgment order of the Sebastian County Chancery Court dismissing their illegal-exaction and unlawful-transfer claims against the appellee, the City of Fort Smith. The appellants claim that the City has been illegally spending its share of revenues collected under a countywide sales and use tax since 1999 when the City's Board of Directors authorized the use of those tax revenues in a manner inconsistent with a resolution passed by the Board in 1994. Furthermore, the appellants allege that two transfers made from the City's water and sewer operating fund to the City's general fund and one transfer made from the City's sanitation operating fund to the City's general fund were unlawful.

We affirm the trial court's grant of summary judgment as to the appellants' first claim because the Board's 1994 resolution does not bind the City in appropriating its share of the countywide sales and use tax revenues; rather, the City's use of those tax revenues is governed by the Sebastian County ordinance that levied the sales and use tax for "general, municipal and county purposes." With regard to the appellants' second claim, we also affirm the trial court's ruling that any challenge to the 1994 transfer of funds is barred by the statute of limitations. However, based upon the evidence submitted to the trial court, we conclude that genuine issues of material fact exist concerning whether the 1996 transfer of funds from the City's water and sewer operating fund complied with the provisions of Ark. Code Ann. § 14-234-214(e) (Repl. 1998). Moreover, with respect to the legality of the 1996 transfer of funds from the sanitation operating fund to the City's general fund, we cannot say that it is clear from the record or the law cited by the parties that the City is entitled to judgment as a matter of law. Accordingly, we reverse the trial court's grant of summary judgment as to the appellants' claims arising out of the 1996 transfers of funds and remand to the trial court for further proceedings.

*I. Standard of Review*

Summary judgment should be granted only when it is clear that there is no issue of fact to be litigated, and the moving

party is entitled to judgment as a matter of law. *Rankin v. City of Fort Smith*, 337 Ark. 599, 990 S.W.2d 535 (1999). Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, responses to requests for admission, and affidavits show that there is no genuine question of material fact to be litigated and the moving party is entitled to judgment as a matter of law. *Loewer v. Cla-Cliff Nursing and Rehab. Ctr.*, 344 Ark. 258, 39 S.W.3d 771 (2001). The burden of proving that there is no genuine issue of material fact is upon the moving party. *Id.* On appellate review, we must determine if summary judgment was proper based on whether the evidence presented by the moving party left a material question of fact unanswered. *Id.* This court views the proof in a light most favorable to the party resisting the motion, resolving any doubts and inferences against the moving party, to determine whether the evidence presented left a material question of fact unanswered. *Rankin v. City of Fort Smith, supra.*

## II. Illegal Exaction

On April 19, 1994, the Quorum Court of Sebastian County approved Ordinance No. 94-10, which called for a special election on the question of a levy of a one percent (1%) sales and use tax for Sebastian County and authorized collection of the tax should it be approved by the Sebastian County electorate. The ordinance, which was published in a local newspaper on April 23, 1994, stated that the tax proceeds would be used for "general, municipal and county purposes." The ballot title itself did not reflect any particular purpose for the tax. On the same day that the Sebastian County Court approved Ordinance No. 94-10, the Board of Directors of the City of Fort Smith adopted Resolution R-67-94, endorsing the passage of the one percent sales and use tax and stating that "if the citizens approve the countywide sales tax . . ., the Board of Directors commit to earmark the following percentages of the City's share of the countywide sales tax as follows. . . ." The resolution contained a specific list, by percentage, of uses the Board committed to make of the tax revenues: 33% to fire and police services; 33% for wastewater improvements; 10% to subsidize the cost of a new landfill in the sanitation program; 6% to improve library programs; 4% for senior citizen and park programs; 3% for capital improvements in the downtown and riverfront areas; 3% to public transportation services; and 8% to replace revenues lost due to the repeal of the City's privilege license requirements. The resolution also promised that, if the countywide sales tax was approved, the Board would extend the one-cent city street, bridge, and drainage sales tax for

another ten years; repeal the City's privilege license requirements and refund the 1994 privilege license fees; and forego a sanitation rate increase scheduled for July 1, 1994. The tax was approved by a majority of the county electorate on June 21, 1994.

From the day collection of the one-percent sales tax first began until December 7, 1999, the City expended its portion of the county sales tax revenues consistently with the commitments made in the 1994 resolution. On December 7, 1999, the Board passed Ordinance No. 76-99, approving the City's year 2000 operating budget. In that budget, the City's share of county sales tax revenues that had been allocated in previous years to the water and sewer operating fund and to the sanitation operating fund, in accordance with the 1994 resolution, were reallocated to other municipal uses. The budget indicated that rate charges for water, sewer, and solid waste services would provide the necessary funding for those operations in the future.

In their first point on appeal, the appellants argue that the City violated Article 16, § 11, of the Arkansas Constitution when it stopped honoring the spending commitments made by the Board in Resolution R-67-94. Specifically, they claim that the City was bound by the 1994 resolution in its use of the tax revenues and that when the voters of the City of Fort Smith voted in favor of the countywide sales and use tax, they were entitled to rely on the Board's commitments in the 1994 resolution. The Arkansas Constitution, at Article 16, § 11, provides: "No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same; and no moneys arising from a tax levied for one purpose shall be used for any other purpose." The intent of this language is for the object of tax revenues to be stated so that the revenues cannot be shifted to a use other than that authorized. *Oldner v. Villines*, 328 Ark. 296, 943 S.W.2d 574 (1997). Thus, both the county ordinance and the city resolution at issue here must be construed in light of the language in this constitutional provision.

We have recently addressed illegal-exaction claims under Article 16, § 11, of the Arkansas Constitution. *See Maas v. City of Mountain Home*, 338 Ark 202, 992 S.W.2d 105 (1999); *Daniel v. Jones*, 332 Ark. 489, 966 S.W.2d 226 (1998); *Oldner v. Villines*, 328 Ark. 296, 943 S.W.2d 574 (1997). In *Oldner*, neither the county ordinance levying the sales tax nor the ballot title referenced a purpose for which the tax proceeds were to be used. *Oldner v. Villines*, 328 Ark. 296, 943 S.W.2d 574. We held in that case that,

"[w]hen a tax is enacted by the General Assembly or approved by a vote of the people without the statement of a purpose, the resulting revenues may be used for general purposes." *Id.* at 305, 943 S.W.2d at 579. This case differs from *Oldner* in that the levying ordinance did specify that the funds collected by the tax would be for "general, municipal and county purposes," although the ballot title did not reflect any particular purpose for the tax.

The *Daniel* case presented a reverse image of the fact pattern in *Oldner*: five specific purposes for the use of tax revenues from a county sales tax were stated in the county ordinance levying the tax and on the ballot. *Daniel v. Jones*, 332 Ark. 489, 966 S.W.2d 226. This court held that any use of the sales tax revenues for purposes other than those provided in the levying ordinance and on the ballot constituted an illegal exaction in violation of Article 16, § 11, of the Arkansas Constitution. *Id.* We also recognized in that case that the voters were entitled to rely upon the information provided to them in the levying ordinance and on the ballot when casting their votes. *Id.*

In *Maas*, the city ordinance levying a one-percent sales tax listed specific restrictions on the use of the tax proceeds, but the ballot contained no specific uses for funds collected by the tax. *Maas v. City of Mountain Home*, 338 Ark. 202, 992 S.W.2d 105. This court held that, where the city ordinance contained specific, exclusive purposes for the tax and where the ordinance was published in its entirety so as to inform the electorate of its provisions, voters were entitled to rely on the language of the levying ordinance, and the absence of the purposes from the actual face of the ballot did not transform the tax into a general-purpose sales tax. *Id.* Accordingly, we concluded that an illegal exaction had occurred where the city used tax revenues for purposes other than those specifically listed in the levying ordinance. *Id.*

Here, we are asked to decide whether the designation in a city resolution of specific purposes for the City's portion of a county-wide sales and use tax is sufficient under Article 16, § 11, of the Arkansas Constitution to determine the purpose of the tax and prohibit contrary uses. The appellants contend that Resolution R-67-94 qualifies as a "law imposing a tax" under Article 16, § 11, such that the City's portion of the tax revenues can only be spent for the specific purposes listed in that resolution. According to the appellants, when the City stopped using its portion of the revenues for those specific purposes, an illegal exaction occurred. Though the appellants acknowledge that the county ordinance stated the tax

revenues were to be used for "general, municipal and county purposes," they argue that the city resolution should control the City's use of its portion of the county tax revenues.[1]

■ ■ In *Oldner*, we held that, for purposes of construing Article 16, § 11, the "law imposing a tax" means the levying ordinance, rather than the enabling legislation. *Oldner v. Villines*, 328 Ark. 296, 943 S.W.2d 574. The appellants propose an expanded meaning for that phrase in Article 16, § 11, so that "the complete spectrum of relevant official information" would have to be considered in determining the stated purpose for tax revenues. Such a proposal goes far beyond and, in fact, ignores the plain language in the constitution that refers only to the "law imposing a tax" and nothing more. This court has stated that, when the language of the Constitution is plain and unambiguous, each word must be given its plain, obvious, and common meaning. *Daniel v. Jones*, 332 Ark. 489, 966 S.W.2d 226. "Neither rules of construction nor rules of interpretation may be used to defeat the clear and certain meaning of a constitutional provision." *Id.* at 499, 966 S.W.2d at 231 (quoting *Foster v. Jefferson County Quorum Court*, 321 Ark. 105, 108, 901 S.W.2d 809, 810 (1995)).

■ It is patently clear, based upon the plain language in Article 16, § 11, of the Arkansas Constitution and our recent case law interpreting that provision, that Sebastian County Ordinance No. 94-10 was the levying ordinance, or the "law imposing a [countywide sales] tax."[2] Likewise, there is no doubt that a city resolution cannot be a levying ordinance for a countywide sales tax. In other words, Resolution R-67-94 was not the "law imposing a [countywide sales] tax."[3] And, even if Resolution R-67-94 were deemed substantively equivalent to an ordinance, it still would not be the ordinance or law imposing the tax. In short, the appellants have failed to cite any authority for the proposition that a city resolution can contravene or supersede the purposes stated in a county ordinance levying a countywide sales tax.

---

[1] In their reply brief, appellants also assert that the City made a commitment to its citizens through Resolution R-67-94 and that the City should be estopped from abandoning that commitment. We will not address this issue, as it was raised before us for the first time in the appellants' reply brief. We do not consider arguments raised for the first time in a reply brief because the appellee is not given a chance to rebut the argument. *Schueck Steel, Inc. v. McCarthy Bros.*, 289 Ark. 436, 711 S.W.2d 820 (1986).

[2] Sebastian County Ordinance No. 94-10 was published in its entirety on April 23, 1994.

[3] Resolution R-67-94 was not published in its entirety following its adoption by the Board on April 19, 1994.

■ For the above-stated reasons, we hold that Resolution R–67-94 was not the "law imposing a tax" under Article 16, § 11, of the Arkansas Constitution, and, thus, the City is not bound by that resolution in appropriating its share of the countywide sales and use tax revenues.[4] "It is only when a diversion of tax revenues occurs from a specific purpose that has been authorized to an unauthorized purpose that an illegal exaction occurs." *Oldner, supra* at 305, 943 S.W.2d at 579. According to Sebastian County Ordinance No. 94-10, the tax proceeds were to be used for "general, municipal and county purposes." Because no funds were used for any purpose other than that authorized in the county levying ordinance, no illegal exaction occurred. We affirm the trial court on this point, as there is no genuine issue of material fact and the City is entitled to prevail as a matter of law.

### III. Transfers of Funds from Utility and Sanitation Accounts

The appellants also allege that three transfers of funds to the City's general fund were unlawful. The first challenged transfer occurred on September 6, 1994, when the City transferred $500,000 from the "unobligated balance" of the water and sewer operating fund to the general fund. The ordinance indicated that the money was appropriated as a "temporary loan" for funding fire equipment purchases. No date was set for repayment of the loan. In 1999, through its adoption of a year 2000 budget, the City relinquished the loan as a debt of the general fund. The ordinance granting relinquishment stated that the cost of the 1994 appropriation would be charged to "the surplus waterworks revenues of the Water and Sewer Operating Fund."

The trial court ruled that the appellants' challenge to this transfer was barred by the statute of limitations. It found that, because the statute commenced running from the date the funds were transferred in 1994, the applicable three-year limitations period had expired. The appellants, on the other hand, contend that the cause of action did not expire until the loan was canceled on December 7, 1999. Thus, they assert that the cause of action was not time barred.

---

[4] Resolution R–67-94 was an electioneering effort by the Board in advance of the vote by the county electorate on the proposed countywide sales tax. If the City's voters disagree with the Board's subsequent allocation of tax revenues in 1999, political consequences will surely follow.

We have previously held that the statute of limitations begins to run on a debt at its maturity. *Smith v. Milam*, 195 Ark. ·157, 110 S.W.2d 1062 (1937). Here, the $500,000 loan stated no date for maturity. Where no time is set for the payment of a debt, the debt is in law payable on demand. *Jonesboro Investment Corp. v. Cherry*, 239 Ark. 1035, 396 S.W.2d 284 (1965). A debt payable on demand is due immediately, so that an action can be brought at any time, without any other demand than the suit, and the statute of limitations begins to run at once. *Sturdivant v. McCorley*, 83 Ark. 278, 103 S.W. 732 (1907). We therefore conclude that the temporary loan made to the general fund in 1994 was due on demand, the statute of limitations on that debt began to run immediately, and the collection of the debt was barred by the three-year statute of limitations in September 1997, well before this lawsuit was filed. Accordingly, we affirm the trial court's ruling that the challenge to this transfer was barred by the statute of limitations.

The statute of limitations would not, however, bar the appellants' challenge to the two fund transfers made in 1996. Both those transfers were accomplished by an ordinance that reflected the monies were available from each fund's county sales-tax allocation. On April 16, 1996, a $2,000,000 loan was made to the general fund from the water and sewer operating fund to be used in the funding of a police facility. That loan was to be repaid in equal installments of $333,333 over a six-year period. Installment payments were made on the loan in 1997 and 1998, but no further payments were made. The year 2000 budget approved by the Board indicated that the remaining debt was "formally rescinded." A $2,000,000 loan was also made to the general fund from the sanitation operating fund to be used in funding the police facility. As with the loan from the water and sewer operating fund, the general fund was to repay the sanitation operating fund in equal installments of $333,333 over a six-year period. Installment payments were made in 1997 and 1998, but no payments were made after that date. The year 2000 budget approved by the Board also indicated that this debt was "formally rescinded."

As to these transfers of funds in 1996, the appellants make several arguments. First, they allege there were no "surplus funds" as defined in Ark. Code Ann. § 14-234-214(e)(1) (Repl. 1998). Second, they contend that excessive fees constitute unlawful taxes. Third, they argue that, even if a surplus existed, it was not disbursed properly under the statutory scheme set out in Ark. Code Ann. § 14-234-214(e). Next, they assert that the controlling statutes, Ark. Code Ann. §§ 14-234-214, 14-235-221, and 14-235-223

(Repl. 1998) are unconstitutional. Finally, they suggest that the transfers were illegal because (a) the water and sewer operating fund and the sanitation fund are special purpose funds that cannot be used for any purpose other than water, sewer and sanitation, respectively; and (b) Resolution R–67-94 restricts the use of those funds.

As to the first argument, the record reflects the following evidence regarding whether the transferred funds were unencumbered, or surplus. An affidavit by Kara Bushkuhl, Finance Director of the City of Fort Smith, states that the $500,000 appropriation authorized in 1994 "was charged to surplus waterworks revenues of the Water and Sewer Operating Fund as defined and authorized by Ark. Code Ann. § 14–234-214(e)(3)(D)." Ms. Bushkuhl also states in the affidavit that the 1996 appropriations of $2,000,000 from the water and sewer operating fund and $2,000,000 from the sanitation operating fund were of "unencumbered surplus funds." However, Ms. Bushkuhl does not indicate that she used any statutory provision to determine whether a surplus existed in 1996. The statutory provision cited in her affidavit in connection with the 1994 appropriation, section 14–234-214(e)(3)(D), only indicates that a surplus can be used for other municipal purposes; whereas, the definition of "surplus funds" is set forth in Ark. Code Ann. § 14–234-214(e)(1): those funds "in excess of the operating authority's estimated cost of maintaining and operating the plant during the remainder of the fiscal year then–current and the cost of maintaining and operating the plant during the fiscal year next ensuing." This statutory definition of "surplus funds" is not referenced anywhere in Ms. Bushkuhl's affidavit. Furthermore, the water and sewer operating fund reported a deficiency of $1,078,459 in fiscal year 1996 and $1,491,915 in fiscal year 1997. The sanitation operating fund also reported deficiencies of $617,188 in fiscal year 1996 and $359,306 in fiscal year 1997. Based upon this record, we conclude that a question of fact remains regarding whether "surplus funds," as defined in Ark. Code Ann. § 14–234-214(e)(1), existed in the City's utility and sanitation accounts prior to the 1996 transfers. We therefore reverse the trial court's grant of summary judgment on this point.

Next, the appellants point out that section 14–234-214(e) only applies to waterworks systems and does not authorize the transfer from the sanitation operating fund.[5] While we might agree

---

[5] On appeal, the appellants do not contest the application of Ark. Code Ann. § 14–234-214(e) to the City's sewer fund. It is undisputed that the City has operated its water and sewer systems as a consolidated utility system for a number of years. The Arkansas General

that this particular section does not apply to sanitation funds, such a conclusion does not necessarily mean that the transfer from the sanitation operating fund was unlawful. The appellants have cited no statutory authority or case law indicating that the transfer from the sanitation fund is prohibited. We have stated that summary judgment is inappropriate where, although there may not be facts in dispute, the facts could result in differing conclusions as to whether the moving party is entitled to judgment as a matter of law. *Wallace v. Broyles*, 332 Ark. 189, 192-193, 961 S.W.2d 712, 722 (1998) (supplemental opinion denying rehearing). Though no facts appear to be disputed as to the transfer of funds from the sanitation operating fund to the general fund, the facts before us do raise a question as to whether the City is entitled to judgment as a matter of law.

■ Ms. Bushkuhl stated, in her affidavit, that it is a generally accepted accounting practice, where permitted by law, for municipalities to supplement utility fund income by sales tax revenues and then utilize surplus revenues of the utility fund for other municipal purposes. Both parties appear to assume that the City's sanitation fund is a utility fund such that it would be governed by the general accounting principles that Ms. Bushkuhl described as being applicable to utilities. Such an assumption, however, may not be warranted under Arkansas law. The City refers us to case law standing for the proposition that surplus utility fund revenues may be used for other municipal purposes. *See Adams v. Bryant*, 236 Ark. 859, 370 S.W.2d 432 (1963); *City of Harrison v. Braswell*, 209 Ark. 1094, 194 S.W.2d 12 (1946); *Johnson v. Dermott*, 189 Ark. 830, 75 S.W.2d 243 (1934). However, none of those cases involve a sanitation fund. Thus, we are unable to conclude that the City is entitled to judgment as a matter of law with respect to the legality of the 1996 transfer of funds from the sanitation operating fund to the City's general fund. Accordingly, we reverse the trial court's grant of summary judgment on this point as well.

■ For their second argument, the appellants contend that excessive fees constitute unlawful taxes. They point to the City Finance Director's statements that water rates had to be increased to meet operational needs, and assert there can be no surplus funds where revenues must be increased to meet the necessary expenses of operation. The argument then shifts to an assertion that, if a surplus existed in the utility funds, the revenue generating the surplus is a

Assembly has recognized the practice of consolidating water and sewer systems in Ark. Code Ann. §§ 14-237-101—14-237-113 (Repl. 1998).

tax. The appellants point to cases where we have held that a fee must be fair and reasonable and bear a reasonable relationship to the benefit conferred by the services in order not to be denominated a tax. *See Harris v. City of Little Rock*, 344 Ark. 95, 40 S.W.3d 214 (2001); *Barnhart v. City of Fayetteville*, 321 Ark. 197, 900 S.W.2d 539 (1995). After citing these cases, the appellants jump to the conclusion that a fee is unreasonable, and therefore a tax, if it exceeds the costs of providing such services. They cite no authority for such a proposition, and this court has never made such a holding. When an appellant neither cites authority nor makes a convincing argument, and where it is not apparent without further research that the point is well taken, we will affirm. *Mikel v. Hubbard*, 317 Ark. 125, 876 S.W.2d 558 (1994).

We turn now to the appellants' third argument. They suggest that, if there was a surplus of funds, it was transferred unlawfully because the City did not disburse the surplus funds in accordance with the progressive order set out in Ark. Code Ann. § 14-234-214(e):

(1) If any surplus is accumulated in the operation and maintenance fund of the waterworks system which shall be in excess of the operating authority's estimated cost of maintaining and operating the plant during the remainder of the fiscal year then-current and the cost of maintaining and operating the plant during the fiscal year next ensuing, the excess may be by the operating authority transferred to *either the depreciation account or to the bond and interest redemption account*, as the operating authority may designate.

(2) If any surplus is accumulated in the *depreciation account* over and above that which the operating authority shall find may be necessary for probable replacements needed during the then fiscal year, and the next ensuing fiscal year, the excess *may be transferred* to the *bond and interest redemption account*.

(3) If a surplus shall exist in the *bond and interest redemption account*, it *may* be applied by the operating authority, *in its discretion*, subject to any limitations in the ordinance authorizing the issuance of the bonds, or in the trust indenture:

(A) To the payment of bonds that may later be issued for additional betterments and improvements;

(B) To the purchase or retirement, insofar as possible, of outstanding unmatured bonds payable from the bond and

interest redemption account, at no more than the fair market value thereof;

(C) To the payment of any outstanding, unmatured bonds, payable from the bond and interest redemption account that may be subject to call for redemption before maturity;

*or*

(D) To any other municipal purpose.

Ark. Code Ann. § 14-234-214(e) (Repl. 1998). (Emphasis added.)

According to the appellants, this statute mandates that surplus funds, as defined in section 14-234-214(e)(1), be applied in a particular progressive order. Under section 14-234-214(e)(1), surplus funds may be first applied either to the depreciation account or to the bond and interest redemption account. Next, pursuant to section 14-234-214(e)(2), if any surplus is accumulated in the depreciation account, the excess may be applied to the bond and interest redemption account. A plain reading of the statute supports the appellants' statutory interpretation up to this point. The appellants then proceed to assert that, under section 14-234-214(e)(3), a surplus in the bond and interest redemption account must be applied as follows: first to the payment of bonds that may later issue for improvements; then to the purchase or retirement of outstanding unmatured bonds; then to the payment of any outstanding, unmatured bonds that may be subject to call for redemption before maturity; and then to any other municipal purpose. We disagree.

A plain reading of Ark. Code Ann. § 14-234-214(e)(3) indicates that any surplus remaining in the bond and interest redemption account may be applied, in the discretion of the operating authority and subject to ordinance and trust limitations, to any one of the four listed uses in section 14-234-214(e)(3). The statute follows a progressive order from section 14-234-214(e)(1) through section 14-234-214(e)(3), but once a surplus is found to exist in the bond and interest redemption account, the operating authority then has discretion to apply the surplus to any one of the four options listed in that section. The disjunctive "or" indicates clearly that any of the four options may be chosen in the discretion of the operating authority. Thus, if a surplus exists in the bond and interest redemption account, the operating authority may apply the surplus to "any other municipal purpose." Once again, based on the record in this

case, we hold that genuine issues of material fact exist as to whether the City complied with the provisions of Ark. Code Ann. § 14-234-214(e) when it transferred the alleged surplus funds to the general fund in 1996. For the reasons already stated, we reverse the grant of summary judgment as to the appellants' claims arising out of the 1996 transfers of funds.

 In arguing that the statutory scheme was not followed, the appellants further contend that the provisions of Ark. Code Ann. §§ 14-235-221 and 14-235-223 (Repl. 1998) were not followed. This argument was not addressed by the trial court. Accordingly, we do not reach the merits of the argument on appeal. It is well-settled that failure to obtain a ruling from the trial court is a procedural bar to our consideration of the issue on appeal. *Barker v. Clark*, 343 Ark. 8, 33 S.W.3d 476 (2000). It is incumbent upon the appealing party to obtain a ruling on an issue to preserve it for review. *Ross Explorations, Inc. v. Freedom Energy, Inc.*, 340 Ark. 74, 8 S.W.3d 511 (2000).

 The fourth argument raised by the appellants is that the City's compliance with sections 14-234-214, 14-235-221, and 14-235-223 is irrelevant because those statutes are unconstitutional. They acknowledge, however, that the trial court did not rule on the constitutionality of the statutes. Without a ruling from the trial court on this issue, we cannot reach the merits of the argument on appeal. *See Barker v. Clark*, 343 Ark. 8, 33 S.W.3d 476.

 In their final argument, the appellants suggest that the fund transfers were illegal because the water and sewer operating fund and the sanitation operating fund are special purpose funds that cannot be used for any purpose other than water, sewer and sanitation, respectively. They contend that "forgiveness of the . . . loans [made by those funds] to the general fund is a diversion of the revenue collected for one purpose to another resulting in a violation of Ark. Const. art. XVI, § 11." However, the appellants cite no legal authority in support of this argument. We have stated on occasions too numerous to count that we will not consider the merits of an argument if the appellant fails to cite any convincing legal authority in support of that argument, and it is otherwise not apparent without further research that the argument is well taken. *Ouachita Trek Development Company v. Rowe*, 341 Ark. 456, 17 S.W.3d 491 (2000); *Matthews v. Jefferson Hospital Ass'n*, 341 Ark. 5, 14 S.W.3d 482 (2000). To the extent that the appellants rely upon Resolution R-67-94, the argument merely restates the first point on appeal. As explained under Part II of this opinion, Resolution

R-67-94 is not the law imposing the tax. Thus, the use of funds in contravention of the purposes set out in that resolution is not an illegal exaction.

Affirmed in part; reversed and remanded in part.