The Honorable Boyd Hickinbotham State Representative P.O. Box 326 Salem, AR 72576-0326
Dear Representative Hickinbotham:
You have requested my opinion concerning Baxter County Quorum Court's Ordinance No. 2002-27, which was entitled: "An ordinance authorizing the issuance of Capital Improvement Hospital Lease Revenue Bonds for the purpose of financing a portion of the cost of an expansion to the County Jail; Pledging Hospital Lease Rentals and Hospital Revenues to pay the principal of and interest on the bonds; and prescribing other matters relating thereto." You indicate that at the time of the passage of this ordinance, Baxter County did not own the property for the jail, or have a building plan or an architect. An election on the bond issue was not held. You further indicate that the county has taken $500,000.00 from the county general fund and has been using it to pay interest on the bonds.
With the foregoing scenario as a backdrop, you have presented the following question:
 Was Amendment 65 the correct authority for the Baxter County Quorum Court's passage of its Ordinance No. 2002-27?
RESPONSE
Preliminary Matters
Before discussing the issue that is raised by your question, I must note several preliminary matters. First, I must note that I have not been provided with a copy of the text of Ordinance No. 2002-27. I must therefore base my analysis of its validity under state law upon the title of the ordinance that you have provided me. For that limited purpose, I will assume that you have stated the title accurately, and that the title accurately reflects the substance of the ordinance.
Moreover, I must point out that the Attorney General is not in a position to undertake the construal of local ordinances. Such construals necessarily involve a determination of the intent of the local legislative body, a factual matter that this office is not well situated to consider and address. Such construals also require a consideration of other factors of which this office is unaware that could reflect a particular intent on the part of the local legislative body that is not apparent from the face of the ordinance. The awareness of such factors is a matter within the local domain, rather than the domain of this office. The construal of any local ordinance therefore must ultimately be handled locally, or through a medium that can consider local factual matters, such as a court. For this reason, I do not express any opinion as to the meaning or intent of Baxter County's Ordinance No. 2002-27. Rather, I will limit my discussion to the applicability of state law to the ordinance as reflected by the title of the ordinance (as you have relayed it to me).
As a final preliminary matter, it should also be noted that ordinances are entitled to a presumption of constitutionality, and the challenger bears the burden of proving otherwise. Harris v. City of Little Rock,344 Ark. 95, 40 S.W.3d 214 (2001).
Summary of Opinion
It is my opinion that Amendment 65 appears to have been proper authority for the passage of Ordinance No. 2002-27, assuming that the title of the ordinance accurately reflects its substance. The fact that monies have been taken from the county general fund to pay interest on the bonds does not, in itself, indicate any violation of law. However, if the non-tax revenues that have been pledged for the payment of the bonds are not sufficient to do so and the county must as a result use tax revenues to make such payments, that use of tax revenues for payment of the interest on the bonds issued pursuant to the ordinance would constitute a violation of Amendment 65. I have not been provided with sufficient facts upon which I can draw any conclusion regarding the county's use of monies from the county's general fund.
Discussion
Amendment 65 can be used as authority for the issuance, without an election,[1] of "revenue bonds for the purpose of financing all or a portion of the costs of capital improvements of a public nature, facilities for the securing and developing of industry or agriculture, and for such other public purposes as may be authorized by the General Assembly." Ark. Const., Am. 65, § 1. Amendment 65 goes on to define the term "revenue bonds," as used therein, as follows:
 (a) The term "revenue bonds" as used herein shall mean all bonds, notes, certificates or other instruments or evidences of indebtedness the repayment of which is secured by rents, user fees, charges, or other revenues (other than assessments for local improvements and taxes) derived from the project or improvements financed in whole or in part by such bonds, notes, certificates or other instruments or evidences of indebtedness, from the operations of any governmental unit, or from any other special fund or source other than assessments for local improvements and taxes.
Ark. Const., Am. 65, § 3(a). The statutory definition that is stated in The Revenue Bond Act of 1987 (A.C.A. § 19-9-601 et seq.), enacted pursuant to Amendment 65, tracks the above-quoted constitutional definition. See A.C.A. § 19-9-604(1).
The above-quoted constitutional definition is quite broad, and includes a wide range of instruments. See, e.g., Ops. Att'y Gen. Nos. 2001-300; 2001-156; 2001-109; 93-383. In my view, the revenue bonds that are the subject of Ordinance 2002-27, at least as described by the title of the ordinance as you have relayed it, fall squarely within Amendment 65's definition. Such bonds therefore can appropriately be issued without an election pursuant to Amendment 65. Moreover, it is permissible to repay such bonds from non-tax revenue sources other than the revenues generated by the project that is funded by the bonds. Harris v. City of LittleRock, 344 Ark. 95, 40 S.W.3d 214 (2001). Accordingly, I must conclude that Amendment 65 appears to have been the correct authority for the passage of Baxter County Ordinance No. 2002-27, assuming (as discussed previously) that the title of the ordinance as you have relayed it to me accurately reflects the substance of the ordinance.
Any further analysis of the issues raised by your question must, therefore, focus on whether the use of monies from the county general fund to repay the bonds constitutes a violation of Amendment 65. I cannot draw any conclusions regarding this matter. The use of monies from the county general fund does not, in and of itself, indicate any violation. The real issue is whether the county has used any tax revenues for the repayment of the bonds.
Amendment 65 clearly prohibits the pledging of tax revenues for the repayment of bonds. It follows, of course, that any use of tax revenues to repay the bonds (despite what was actually pledged) would constitute a violation of Amendment 65. Harris, supra at 102 (stating: "Clearly, Amendment 65 forbids such action."). Both tax revenues and non-tax revenues typically go into a county's general fund. It is my understanding that hospital revenues in Baxter County are, in fact, placed into the county's general fund. It is also my understanding that a portion of the jail construction project is being funded (separate and apart from the bond revenues) by amounts previously appropriated by the quorum court for that purpose. In order to establish a violation of Amendment 65 in this case, it would be necessary to show that the hospital revenues were insufficient to meet the city's bond obligations under Ordinance 2002-27, and that the county had in fact dipped into tax revenues to meet those bond obligations.
The situation you have described bears some similarity to the situation addressed by the Arkansas Supreme Court in Rankin v. City of Ft. Smith,337 Ark. 599, 990 S.W.2d 535 (1999). There, the city enacted an ordinance under the authority of Amendment 65, pledging parking facilities revenues for the repayment of the bonds issued pursuant to the ordinance. The challenger argued that the city had then violated Amendment 65 by transferring monies from its general fund in order to make up a shortfall in parking facilities revenues that was needed to pay the debt service obligations on the bonds. The court upheld a summary judgment in favor of the city, because the city had produced an affidavit showing that its parking facilities revenues were sufficient to meet the bond obligations, and the challenger had not produced any evidence to contradict this showing.
On the basis of this authority, I must conclude that the use of monies from the county's general fund does not, in and of itself, necessarily indicate any violation of Amendment 65. In order to establish such a violation, it would be necessary to show that the county had, in fact, used tax revenues for the repayment of the bonds. I have not been provided with sufficient facts to draw any conclusions regarding the county's use of monies from the general fund.
I note that you have contended that the better authority for the passage of Ordinance No. 2002-27 would have been Amendment 62, which requires an election for approval of the bond issue, and which authorizes the use of tax proceeds for the repayment of bonds. You argue that Amendment 62 is more specific than Amendment 65. I disagree with your analysis, as applied to the face of Ordinance 2002-27 (again, as reflected in the title you have provided). Amendment 65 is clearly adequate authority for the type of bond issue that is described in the title of Ordinance No. 2002-27, because the ordinance purports to pledge only "hospital lease rentals and hospital revenues" to pay the principal and interest on bonds that would be issued for a public purpose. That is precisely the type of bond issue (i.e., bonds repaid with non-tax revenues) that is authorized by Amendment 65. Moreover, in the Revenue Bond Act of 1987 (A.C.A. §19-9-601 et seq.), enacted pursuant to Amendment 65, the General Assembly specifically included jails in its list of permissible uses of Amendment 65 bonds. For these reasons, I conclude that Amendment 65 was proper authority for the passage of Ordinance No. 2002-27.
You are correct in asserting that if the county intends to use tax revenues to meet its bond obligations in connection with the construction of the jail, it should have followed the procedures required under Amendment 62, including the holding of an election on the bond issue. However, I reiterate that the use of monies from the county's general fund to meet bond obligations does not necessarily indicate that the county has used tax revenues for that purpose.
I also reiterate that the opinions expressed herein are based wholly upon the limited facts that you have provided. I have not construed the provisions of Ordinance No. 2002-27, nor have I voiced any interpretation of the actual intent or actions of the county. These are factual matters that I am not in a position to interpret. Rather, I have limited my discussion to the applicability of Amendment 65 to the ordinance, as youhave described it and as you have described the events following itspassage. Different facts could, of course, lead to a different legal conclusion.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
[1] Amendment 65 authorized, but did not require, the General Assembly to condition the issuance of bonds under Amendment 65 upon a vote of the people. See Ark. Const., Am. 65, § 1. The General Assembly has declined to do so. See the Revenue Bond Act of 1987 (A.C.A. § 19-9-601, et seq.), enacted pursuant to Amendment 65. The Act requires a hearing, but not an election. See A.C.A. § 19-9-607.