Cite as 2026 Ark. App. 31

# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV
No. CV-24-577

|  |  |  |
|---|---|---|
| | | **Opinion Delivered** January 21, 2026 |
| SIMON POCKRUS | | |
| | APPELLANT | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT |
| V. | | [NO. 04DR-12-2118] |
| KRISTY POCKRUS (NOW SAVOLD) | | HONORABLE JOHN R. SCOTT, |
| | APPELLEE | JUDGE |
| | | AFFIRMED |

### N. MARK KLAPPENBACH, Chief Judge

Simon Pockrus appeals from the order of the Benton County Circuit Court directing that he equally divide his retirement accounts with his ex-wife, Kristy Savold, as they had agreed to do in their 2013 divorce. On appeal, Simon argues that Kristy's claim is barred by the statute of limitations, that she is not entitled to any gains on the accounts since the divorce, and that the award of attorney's fees should be reversed. We affirm.

The parties' September 2013 divorce decree attached and incorporated a mediation agreement entered into by the parties that purported to fully and finally resolve all issues regarding property division, debt division, and alimony. The attached document was titled "Memorandum of Understanding" and stated, in part, as follows:

> The parties shall each divide 50/50 any 401k, profit sharing, retirement and any other bank accounts that they have. . . . That both parties have withdrawn monies from

these accounts and both shall provide statements as of date of separation and current statements and the division of all accounts will be equalized.

A qualified domestic relations order (QDRO) was entered by the court in May 2014 stating that Kristy was entitled to 50 percent of the balance, as of December 12, 2012, of two retirement accounts Simon held with Edward Jones.

In November 2021, Kristy filed a motion for a renewed QDRO. She alleged that she had been unaware of the entry of the 2014 QDRO and that no one had provided it to Edward Jones; thus, the accounts were never divided. She requested that the court sign a new QDRO directed toward the current holder of Simon's retirement accounts. Attempts to resolve the issue outside of court had been unsuccessful. Simon filed a response opposing the entry of a new order.

At the hearing on Kristy's motion, Simon testified that he moved his retirement accounts from Edward Jones to LPL Financial in late 2019 or early 2020. Kristy testified that she did not become aware that the 2014 QDRO had been entered until November 2021. She said that she did not know when the division of the accounts was supposed to occur, and she had not taken any action to try to get her money until 2021. Simon's attorney argued that the parties' memorandum of understanding was a contract, and the five-year statute of limitations had run from the date of the divorce decree. Kristy's attorney argued that the parties' agreement did not have a deadline and that any statute of limitations would not have started running until November 2021 when Simon first breached the agreement by refusing to abide by its terms. Simon's counsel argued that Simon had complied with the

agreement, but Kristy never took any action to enforce it; accordingly, the statute of limitations had expired.

The circuit court found that the memorandum of understanding did not provide a deadline for the accounts to be divided and did not specify which party was responsible for providing a QDRO to the financial providers. The court ruled that the statute of limitations had not run because the cause of action did not accrue until November 2021 when Simon first refused to follow the memorandum of understanding. The court's order provided that Simon "shall prepare a QDRO that transfers an amount equal to [Kristy's] share of his Edward Jones' accounts as of the original determination date plus any gains on said amount." The court subsequently granted Kristy's motion for attorney's fees in the amount of $1387.50.

On appeal, Simon argues that the five-year statute of limitations applicable to written contracts pursuant to Arkansas Code Annotated section 16-56-111(a) (Repl. 2005) bars Kristy's action. He contends that the statute of limitations began to run when the memorandum of understanding was signed on July 19, 2013. We disagree.

The statute of limitations for a contract runs from the point at which the cause of action accrues rather than from the date of the agreement. *Davenport v. Pack*, 35 Ark. App. 40, 812 S.W.2d 487 (1991). For breach of contract, the true test in determining when a cause of action arises or accrues is to establish the time when the plaintiff could have first maintained the action to a successful conclusion. *Oaklawn Bank v. Alford*, 40 Ark. App. 200, 845 S.W.2d 22 (1993). A cause of action for breach of contract accrues the moment the

right to commence an action comes into existence and occurs when one party has, by words or conduct, indicated to the other that the agreement is being repudiated or breached. *Id.* In ordinary contract actions, the statute of limitations begins to run upon the occurrence of the last element essential to the cause of action. *Id.*

In the case of an oral contract with no specific time limits, we held that the statute of limitations did not begin to run until demand was made to perform decades later and the request was refused. *See Est. of Daniel v. Est. of Daniel*, 2024 Ark. App. 120, 686 S.W.3d 512. Although a condition in the agreement in *Daniel* had occurred in 1982, no steps were taken thereafter to enforce the agreement until 2020. Accordingly, we held that the cause of action did not accrue until 2020.

Here, Simon argues that Kristy's claim accrued the moment the agreement was signed, but he does not explain how the contract was immediately breached. The case relied on by Simon, *Meadors v. Meadors*, 58 Ark. App. 96, 946 S.W.2d 724 (1997), did not reach the appellant's argument regarding when the statute of limitations began to run because it was not preserved. As in *Daniel*, the agreement here does not contain any time limits and does not even specify the parties' obligations regarding obtaining a QDRO or delivering it. The funds remained in Simon's accounts, and Kristy was not damaged until November 2021 when she sought to have her funds transferred and Simon refused. It was at this point that one party "indicated to the other that the agreement is being repudiated or breached." *Oaklawn Bank*, 40 Ark. App. at 203, 845 S.W.2d at 24. Accordingly, because the breach did

4

not occur until 2021, we affirm the circuit court's finding that this action was not barred by the statute of limitations.

Simon also argues that the circuit court erred in ordering that the new QDRO shall transfer an amount equal to Kristy's share of the Edwards Jones accounts as of the original determination date "plus any gains on said amount." Relying on *Duncan v. Duncan*, 2011 Ark. 348, 383 S.W.3d 833, he argues that Kristy waived any right to benefit from market fluctuations by waiting to request division of the accounts. In *Duncan*, a QDRO was implemented and the ex-wife's portion of the ex-husband's retirement account was segregated into a separate account in her name; however, the ex-wife initially refused distribution because she disputed the amount. The supreme court held that the ex-wife was not entitled to a judgment for the losses due to market fluctuation that occurred between the time her portion was segregated and the time she accepted payment. Here, no QDRO was ever implemented; thus, Kristy's portion had never been segregated. In any event, Simon's argument is not preserved for review. Simon did not object when the circuit court ruled from the bench that Kristy was entitled to gains on the accounts, and he did not file a posthearing motion seeking to challenge this finding. It is well settled that this court does not consider arguments raised for the first time on appeal. *Scott v. Barnes*, 2024 Ark. App. 418, 698 S.W.3d 394.

Simon's argument for reversal of the attorney's-fee award is based solely on his claim that he should prevail on his statute-of-limitations argument. Because we affirm the court's order regarding division of the accounts, we affirm the fee award.

5

Affirmed.

BARRETT, THYER, and MURPHY, JJ., agree.

ABRAMSON and HIXSON, JJ., dissent.

**KENNETH S. HIXSON, Judge, dissenting**. It's a shame; that's what it is. The appellee muddied the water sufficiently enough that, unfortunately, the majority succumbed to a red-herring argument to avoid the simple age-old black-letter application of the "occurrence v. discovery" rule regarding the commencement of the statute of limitations. Simply put, when did Kristy file her petition for relief? She filed it after she *discovered* she had not received the funds she was entitled to receive some eight years earlier. Her *discovery* and her claim for relief filed eight years later were well past the expiration of the five-year statute of limitations. I would reverse.

While this is an unfortunate and sympathetic result for Kristy, it is not complicated, and the majority upends decades of black-letter law. The parties' Memorandum of Understanding wherein they agreed to equally divide the retirement accounts was incorporated but not merged into the divorce decree entered on September 24, 2013. The bottom line is that Simon did not transfer one-half of his retirement funds to Kristy as they had agreed and as he was ordered. That was wrong, and I cannot condone Simon's failure to transfer the funds, which resulted in a windfall to him. However, I am constrained to follow the law whether I like it or not.

Eight years after being awarded one-half of Simon's retirement fund, in November 2021, Kristy discovered that Simon had failed to transfer one-half of the funds to her. Kristy

6

demanded that Simon then transfer the funds, and he refused to do so. Kristy initiated the litigation herein on November 22, 2021, and Simon filed a motion to dismiss, arguing that the five-year statute of limitation had expired.

The issue here is whether the statute of limitations commences when the alleged wrongful act occurs (the "occurrence") or when the breach is discovered. This is typically referred to as "occurrence v. discovery" rule. "The true test in determining when a cause of action arises or accrues is *to establish the time when the plaintiff could have first maintained the action to a successful conclusion.*" *Dupree v. Twin City Bank*, 300 Ark. 188, 191, 777 S.W.2d 856, 858 (1989) (quoting 51 Am. Jur. 2d *Limitation of Actions* (1970)) (emphasis added). In *Splawn v. Wade*, 2014 Ark. App. 151, we held that when there is no specification as to the time of performance of a contract, the law implies that it must be performed within a *reasonable time*. Here, Kristy could have filed a petition for relief at any *reasonable time* after the decree was entered on September 24, 2013, when Simon agreed and was ordered to transfer one-half of his retirement funds to Kristy. She waited eight years until she *discovered* Simon had not made the transfer.

We have often recited and followed the general rule that the statute of limitations commences, absent fraud, when the alleged wrongful act occurs and not when the breach is discovered in various situations. We provide the following analogies to assist us in determining the commencement date herein.

By analogy—in the context of repayment of a loan—the statute of limitations begins to run on the debt at its maturity. *Maddox v. City of Fort Smith*, 346 Ark. 209, 56 S.W.3d 375

7

(2001). However, where no time is set for payment of the debt, the debt is payable on demand, and a debt payable on demand is due immediately so that an action can be brought at any time, without any demand other than suit, and the statute of limitations begins to run at once. *Id.* Thus, in *Maddox*, the supreme court held that the loan at issue (that had no maturity date) was due on demand, and the statute of limitations on the debt began to run immediately.

Another analogy is in the field of attorney malpractice, especially in the estate-planning arena. Where an attorney commits malpractice/negligence in drafting an estate plan, and the error only comes to light many years later when the decedent's estate is probated, we have routinely held that the statute of limitations commences when the wrongful act occurred (the drafting of the estate plan) and not when it was discovered many years later. *See Stoltz v. Friday*, 325 Ark. 399, 926 S.W.2d 438 (1996) (holding that the statute of limitations applicable to malpractice actions begins to run, *in the absence of concealment of the wrong*, when the negligence occurs, and not when it is discovered).

There are numerous other cases that consistently hold that the statutory-limitations period begins to run when there is a complete and full cause of action, which is when the alleged wrongful act occurs and not when it is discovered. *See, e.g.*, *Gunn v. Farmers Ins. Exch.*, 2010 Ark. 434, 372 S.W.3d 346 (explaining the supreme court's rejection of continuing tort theory); *Parkerson v. Lincoln*, 347 Ark. 29, 61 S.W.3d 146 (2001) (stating that the limitations period in actions on contract begins to run when there is a complete and present cause of action and, in the absence of concealment of the wrong, when the injury occurs, not when

8

it is discovered); *Tate v. Lab'y Corp. of Am. Holdings*, 102 Ark. App. 354, 285 S.W.3d 261 (2008) (holding that three-year statute of limitations barred putative father's negligence claim against medical laboratory for false positive paternity test, the statute commencing when the blood test showed probability of paternity, not when a years-later DNA test excluded him as father; occurrence rule, rather than discovery rule, applied).

Returning to the case bar, the threshold and dispositive question is *when could Kristy have first maintained the action to a successful conclusion?* Because Simon did not transfer the retirement funds as he agreed and was ordered to do in the September 24, 2013 decree, Kristy could have successfully prosecuted her petition for relief any reasonable time after the divorce decree was filed. Instead, she waited eight years until she *discovered* Simon had not transferred the funds. In my opinion, eight years is not reasonable.

One might ask, If eight years *is* reasonable, what about ten years, twenty years . . . ? By making the proper inquiry, What is reasonable?, we would honor the many years of precedent and hold under the circumstances of this case that eight years is not reasonable.

However, by holding that the cause of action in this case arose when Kristy *discovered* the breach eight years later, this court, in effect, is holding that the statute of limitations commences when the breach is *discovered* and not when the breach *occurred*, which is inconsistent with, and contrary to, prior precedent. Affirming the trial court's ruling reverses years of settled statute-of-limitations law and has the potential for immeasurable conflict and uncertainty to the bench and bar. Accordingly, I would reverse the trial court's order

9

awarding Kristy one-half of Simon's retirement accounts. Because I would reverse the underlying order, I would also reverse the award of attorney's fees.

Abramson, J., joins.

*Hirsch Law Firm, P.A.*, by: *E. Kent Hirsch*, for appellant.

*Matthews, Campbell, Rhoads, McClure & Thompson, P.A.*, by: *Sarah L. Waddoups*, for appellee.